[No. B203317. Second Dist., Div. One. Mar. 10, 2009.]

EDIXON FRANCO, Plaintiff and Appellant, v.
ATHENS DISPOSAL COMPANY, INC., Defendant and Respondent.

COUNSEL

Rastegar & Matern, Matthew J. Matern and Thomas S. Campbell for Plaintiff and Appellant.

Hill, Farrer & Burrill, Kyle D. Brown, James A. Bowles and E. Sean McLoughlin for Defendant and Respondent.

OPINION

**MALLANO, P. J.**—Plaintiff, a trash truck driver, filed this suit, denominated a class action, against his former employer, a private company. He alleged the employer had violated the Labor Code by, among other things, denying meal and rest periods. The employer responded with a petition to compel arbitration based on a written agreement with plaintiff. The agreement contained a provision waiving class arbitrations. It also precluded an employee from acting in "a private attorney general capacity," which would bar plaintiff's enforcement of the Labor Code on behalf of other employees.

Plaintiff argued that the petition should be denied because the class arbitration waiver and the private attorney general prohibition were unconscionable. The trial court disagreed and granted the petition, effectively limiting the arbitration to *plaintiff's* claims.

■ We conclude that the class arbitration waiver is invalid with respect to the alleged violations of the meal and rest period laws given "the modest size of the potential individual recovery, the potential for retaliation against members of the class, [and] the fact that absent members of the class may be ill informed about their rights." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 463 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*).) In addition, because the arbitration agreement prevents plaintiff from acting as a private attorney general, it conflicts with the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, §§ 2698–2699.5)—an act that furthers *Gentry*'s goal of comprehensively enforcing state labor laws through statutory sanctions (see *Gentry, supra*, 42 Cal.4th at pp. 462–463).

Thus, the arbitration agreement is invalid in more than one respect and is unenforceable in its entirety. We conclude that the case should be tried in a court of law.

## I

## BACKGROUND

The allegations, facts, and evidence on appeal are drawn from the complaint and the papers filed in connection with the petition to compel arbitration.

A. *The Complaint*

On April 9, 2007, plaintiff Edixon Franco filed a class action complaint against Athens Disposal Company, Inc. (Athens), alleging as follows. Franco had been employed by Athens as a nonexempt, hourly employee until he left the company. He brought this suit individually and on behalf of other similarly situated current and former employees. The potential class is significant in size such that individual joinder would be impractical. Athens engaged in a systematic course of illegal payroll practices and policies in violation of the Labor Code and the Business and Professions Code. Athens subjected all of its hourly employees to the identical violations.

The first cause of action alleges that Athens violated Labor Code sections 510 and 1194 by failing to pay overtime. (All statutory references are to the Labor Code unless otherwise indicated.) In the second cause of action, Franco alleges that Athens violated section 226.7 and the applicable Industrial Welfare Commission wage order, No. 9-2001 (Wage Order) <http://www.dir.ca.gov/IWC/IWCArticle9.pdf> (as of Mar. 10, 2009), codified at California Code of Regulations, title 8, section 11090. More specifically, Athens allegedly failed to provide meal periods and to pay an additional hour of compensation per workday to employees who missed a meal period. The third cause of action alleges a separate violation of section 226.7 and the Wage Order by failing to provide rest periods and to pay an additional hour of compensation per workday to employees who missed a rest period. In the fourth cause of action, the complaint asserts violations of sections 226, 1174, and 1174.5, as well as the Wage Order, by failing to provide necessary payroll information to employees and failing to maintain records on each employee showing all hours worked and all meal periods taken. The fifth cause of action seeks civil penalties authorized by the PAGA for violating the Labor Code as to Franco and other current and former employees; Franco alleges he exhausted the requisite administrative remedies under the act. (See §§ 2699.3, 2699.5.) The sixth cause of action alleges a violation of the California unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

B. *The Petition to Compel Arbitration*

On June 22, 2007, Athens filed a petition to compel arbitration and to dismiss or stay the civil action. The petition stated that Athens was in the

business of trash removal, hauling, disposal, and recycling and was engaged in interstate commerce within the meaning of the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16). Athens alleged that arbitration was required under the arbitration agreement signed by Franco—written in Spanish—which was attached as an exhibit. According to the petition, the arbitration would be conducted pursuant to the employment arbitration rules of the American Arbitration Association (AAA). Further, "AAA . . . has promulgated supplemental rules for class arbitrations, including rules permitting the AAA and the arbitrator to determine whether and when class claims may be pursued in arbitration and the procedures for arbitration of such claims."

Nevertheless, the attached arbitration agreement provided that "both you and the Company forgo and waive any right to join or consolidate claims in arbitration with others or to make claims in arbitration as a representative or as a member of a class or in a private attorney general capacity. . . . No remedies that otherwise would be available to you individually or to the Company in a court of law, however, will be forfeited by virtue of this agreement . . . . [¶] . . . The parties in any such arbitration will be limited to you and the Company . . . ."

Small claims actions were exempt from arbitration, whether brought by the employee or the company. The agreement provided that it would be governed by the FAA.

## C. *Proceedings on the Petition*

On July 23, 2007, Athens filed a notice of hearing, a memorandum of points and authorities, and supporting evidence, setting the hearing for August 16, 2007. Athens made a straightforward argument: Under the FAA, arbitration was mandatory.

On August 3, 2007, Franco filed opposition papers, asserting that the class arbitration waiver was (1) invalid under *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*) and (2) unconscionable because it prevented him from acting as a private attorney general under the PAGA. Franco contended that the arbitration agreement was so tainted with illegality that Athens's petition should be denied in its entirety.

In its reply, Athens argued that Franco had not filed a timely response to the petition, thereby admitting all of Athens's allegations. (See Code Civ. Proc., §§ 1290, 1290.6.) Athens distinguished *Discover Bank* as involving a class arbitration waiver in consumer litigation where small sums of damages are caused by a fraudulent credit card scheme. Finally, Athens stated that

Franco could seek the penalties authorized under the PAGA because nothing in the arbitration agreement precluded him from doing so.

The petition was heard on August 20, 2007. During argument, the trial court expressed the view that *Discover Bank* did not extend to employment cases. By order of the same date, the trial court granted the petition and directed Franco to submit his claims to arbitration in accordance with the arbitration agreement, that is, as individual claims. The trial court also ordered that the civil action be dismissed, but the court retained "jurisdiction to either vacate the dismissal in order to enter any order(s) necessary to enforce this order or to aid the arbitration so ordered, or to enter an order to confirm, modify or vacate any award entered in the arbitration proceedings so ordered." Franco filed an appeal from the order granting the petition.

Meanwhile, on September 4, 2007, Franco filed a motion for reconsideration based on the Supreme Court's August 30, 2007 decision in *Gentry, supra,* 42 Cal.4th 443, which extended the rationale of *Discover Bank* to overtime compensation claims. Notwithstanding Athens's opposition, the trial court granted reconsideration and, by order dated October 22, 2007, instructed the parties to file supplemental papers, stating "the *Gentry* opinion establishes that a class action arbitration waiver in an employment agreement may be unconscionable."

### 1. *Franco's Supplemental Memorandum*

Franco worked for Athens from May 22, 2005, to May 10, 2006. He submitted evidence showing that, based on his hourly wage, his estimated damages for the alleged denial of meal and rest periods totaled $7,750; he would also be entitled to approximately $2,500 in civil penalties. As for Franco's overtime allegations, he was owed around $15,000 in lost pay and $1,250 in civil penalties. Franco filed a declaration in which he stated that, during his employment with Athens (1) he did not know he was entitled to an hour's pay if Athens did not give him a meal or rest period; (2) he was not aware of all of his rights under the Labor Code or other labor law; (3) in his experience, employees who complained about working conditions were "looked down on" by management and "often los[t] their jobs or [were] treated in ways that force[d] them to quit"; and (4) he "did not feel secure enough to complain about anything [he] may have felt was wrong . . . . [He] felt that if [he] complained about anything [he] would be fired."

Franco filed declarations from three attorneys who specialize in employment law and class actions. As one of Franco's attorneys explained, "Without the ability to litigate these [labor] cases as a class proceeding, my firm could not represent the individual class members especially if we had [to] arbitrate

each one separately because of the low damages present in many of these cases, including this one." The other two attorneys were of the same view. One attorney opined that "paying the claims of each individual employee who happens to walk into my or another attorney's office will not deter the employer from continuing to deny meal and rest periods or force the employer to pay its employees the wages due. Rather, preventing class proceedings from occurring will only allow this and other employers to pay the claims of a few employees, if any, and continue violating the Labor Code unabated."

Franco asserted that the petition to compel arbitration should be denied in its entirety because (1) the class arbitration waiver was unconscionable and (2) the private attorney general prohibition precluded him from recovering civil penalties under the PAGA on behalf of other current and former employees.

### 2. *Athens's Supplemental Memorandum*

Athens submitted evidence that Franco was employed as a waste hauling driver, he held a commercial driver's license, and he drove one of the company's trash trucks, a three-axle commercial vehicle weighing more than 10,000 pounds.

An operator of that type of vehicle is exempt from the overtime provisions of the Labor Code (§§ 510, 1194). (See Cal. Code Regs., tit. 13, § 1200, subd. (a); Veh. Code, § 34500, subd. (a).) Rather, the operator is subject to the regulations of the Department of the California Highway Patrol. (See Cal. Code Regs., tit. 13, §§ 1200–1216.) Franco did not contend he was entitled to overtime compensation based on those regulations. Nor did he suggest another ground for overtime pay under state or federal law, such as the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.). (See 29 U.S.C. § 213(b)(1) [certain commercial drivers exempt from overtime provisions of FLSA]; 1 Wilcox, Cal. Employment Law (2008) §§ 3.03[1][b], 3.03[2][b], pp. 3-16.1 to 3-17, 3-19 & fn. 40 [certain commercial drivers exempt from California and federal overtime laws].)

Athens also offered evidence that its drivers were told more than once, sometimes in both English and Spanish, to take all required meal and rest periods. The company posted the Wage Order where drivers congregated. Further, Athens utilized an electronic timecard system, and employees "swiped" their individual badges when arriving and leaving the workplace. The company kept accurate computerized records of the hours worked by its drivers. Athens had a policy not to permit or tolerate retaliation against employees for reporting problems, making complaints, or asserting their legal rights.

Athens argued that *Gentry* did not apply for several reasons and urged the trial court to issue an order compelling arbitration under the arbitration agreement as written.

### 3. *The Trial Court's Ruling*

On December 6, 2007, the trial court heard further argument on the petition to compel arbitration and took the matter under submission. Later that day, the court issued an order granting the petition and directing Franco to submit his claims to arbitration in accordance with the arbitration agreement. In its order, the trial court stated that Franco had no overtime claim under the Labor Code, and thus *Gentry* did not apply. Assuming *Gentry* applied to the nonovertime claims, Franco had failed to show that class arbitration would be significantly more effective than individual arbitrations. As shown by Athens's evidence, Franco's claims concerning meal and rest periods were not suitable for class treatment because of the preponderance of individualized issues, the specific inquiries into the merits of each individual's claims, and the varying extent of liability. Last, Athens's arbitration program would not disadvantage any employee who pursued claims through individual arbitration.

Franco did not appeal from the December 6, 2007 order but relied on the earlier appeal from the August 20, 2007 order.

## II

## DISCUSSION

" ' "Whether an arbitration agreement applies to a controversy is a question of law to which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of interpretation was introduced in the trial court." [¶] . . . Where the trial court's decision on arbitrability is based upon resolution of disputed facts, we review the decision for substantial evidence. . . .' " (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 673, 685 [132 Cal.Rptr.2d 207].)

■ The party opposing arbitration has the burden of establishing that an arbitration provision is invalid. (See *Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 955 [85 Cal.Rptr.3d 817].) "[T]o the extent the trial court's determination that the arbitration agreement was [valid] turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under

the substantial evidence standard." (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892 [71 Cal.Rptr.3d 854].)

## A. *Preliminary Issues*

At the outset, we address issues concerning (1) appealability, (2) Franco's allegedly untimely response to the petition, and (3) the trial court's handling of the overtime claim.

### 1. *Appealability*

Athens contends that Franco's appeal from the first order was improper, and the appeal should be dismissed because the trial court's reconsideration of that order had the effect of vacating it. We disagree. The first order found that the class arbitration waiver was enforceable and instructed Franco to arbitrate his claims individually. That was the "death knell" of class litigation through arbitration. Any subsequent motion for reconsideration or renewal in the trial court had no effect on the appealability of the first order. Consequently, Franco filed a proper appeal. (See *Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 810–814 [1 Cal.Rptr.2d 130]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2008) ¶¶ 2:39 to 2:39.1, p. 2-25 (rev. # 1, 2008).)

### 2. *Timeliness of Franco's Response*

██ Under the California Arbitration Act (Code Civ. Proc., §§ 1280–1294.2), "[a] copy of the petition and a written notice of the time and place of the hearing thereof and any other papers upon which the petition is based shall be served in the manner provided [herein]." (*Id.*, § 1290.4, subd. (a).) "A response shall be served and filed within 10 days after service of the petition . . . ." (*Id.*, § 1290.6.) If a response is not "duly served and filed," the allegations of the petition "are deemed to be admitted." (*Id.*, § 1290.)

Athens argued, and the trial court found, that Franco did not serve and file a timely response to the petition. Assuming for purposes of appeal that the trial court was correct, the untimeliness of the response is of no import. None of the allegations in the petition concerns the questions before us.

### 3. *The Overtime Claim*

██ In determining the validity of a class arbitration waiver, the trial court must consider the plaintiff's theories of liability and the amount of the typical individual recovery. (See *Gentry, supra*, 42 Cal.4th at pp. 457–458 & fn. 4 [average recovery for state overtime claims], 459 [median award in federal

age discrimination suits]; *Discover Bank, supra,* 36 Cal.4th at p. 154 [amount of unlawful late fee imposed on credit card payments in suit based on breach of contract and Delaware consumer fraud statute].) Franco relied on provisions of the Labor Code as the basis of his overtime claim.

Athens argued Franco was exempt from state overtime laws based on evidence that he drove a commercial truck having three axles and weighing over 10,000 pounds. (See Cal. Code Regs., tit. 13, § 1200, subd. (a); Veh. Code, § 34500, subd. (a).) The trial court agreed, ruled that Franco had no overtime claim, and gave it no consideration in determining the validity of the class arbitration waiver. The court also found that the waiver was valid as to the remaining claims for meal and rest period violations. The result, as stated, was the "death knell" of class arbitration—the equivalent of an order denying class certification.

■ This procedural history raises concerns about the trial court's decisionmaking process. It may well be that, as a matter of law, Franco is exempt from state overtime laws. And the exemption may be quite easy to prove. Yet, the trial court did not follow established procedures in finding that Franco was an exempt employee. As noted in *Gentry,* "The kind of inquiry a trial court must make [in deciding whether to invalidate a class arbitration waiver] is similar to the one it already makes to determine whether class actions are appropriate." (*Gentry, supra,* 42 Cal.4th at p. 463.) The inquiry into class certification, however, does not include consideration of the merits or sufficiency of a plaintiff's cause of action.

■ "[W]e view the question of [class] certification as essentially a procedural one that does not ask whether an action is legally or factually meritorious. Nonetheless, we remain mindful that if the class action is to prove a useful tool to the litigants and the court, trial courts must be accorded the flexibility 'to adopt innovative procedures, which will be fair to the litigants and expedient in serving the judicial process.' . . . Here, [the defendant] argues that a court's decision whether to certify a class . . . should be informed by an evaluation of the merits of the proposed class claims. . . .

■ "We agree that the important interests of fairness and efficiency sometimes may be served better when class causes of action are screened for legal sufficiency before the matter of certification is decided. But nothing prevents a court from weeding out legally meritless [claims] prior to certification via a defendant's demurrer or pretrial motion. In fact, it is settled that courts are authorized to do so. . . .

■ "When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and

efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims. . . . [P]rocedures already exist for early merit challenges." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439–441 [97 Cal.Rptr.2d 179, 2 P.3d 27], citations & fn. omitted.)

Here, the trial court granted a de facto summary adjudication motion on the overtime claim in determining the enforceability of a class arbitration waiver. That was error. Absent a demurrer or dispositive motion—Athens brought none—Franco's overtime claim had to be considered as part of the case in deciding the validity of the class arbitration provision.

And, as we shall discuss, the trial court erred in upholding the class arbitration waiver with respect to the meal and rest period claims.

### B. *The Class Arbitration Waiver*

██ *Gentry* held that "at least in some cases," "class arbitration waivers in employment arbitration agreements may [not] be enforced to preclude class arbitrations by employees whose statutory rights to overtime pay pursuant to [the Labor Code] allegedly have been violated." (*Gentry, supra*, 42 Cal.4th at p. 450, fn. omitted.) The court observed that in those cases, "the prohibition of classwide relief would undermine the vindication of the employees' unwaivable statutory rights and would pose a serious obstacle to the enforcement of the state's overtime laws." (*Ibid.*) In the present case, the trial court improperly disposed of Franco's overtime claim, leaving only the meal and rest period claims for its consideration. (See pt. IIA.3., *ante*.)

Thus, the primary issue on appeal is whether *Gentry* applies to claims for meal and rest periods under the Labor Code (§§ 512, 226.7) and the Wage Order (Wage Order, §§ 11, 12). We conclude it does. *Discover Bank*, a consumer case, laid the foundation for *Gentry*, an overtime case. And it is but a small step from the overtime claims in *Gentry* to the meal and rest period claims here. Although overtime compensation is undoubtedly important (see *Gentry, supra*, 42 Cal.4th at p. 456), the state has a significant interest in making sure that the drivers of commercial vehicles receive sufficient food and rest while on the job.

#### 1. *Unwaivable Statutory Rights*

██ "Meal and rest periods have long been viewed as part of the remedial worker protection framework. . . . Concerned with the health and

welfare of employees, the [Industrial Welfare Commission] issued wage orders mandating the provision of meal and rest periods in 1916 and 1932, respectively. . . . The wage orders required meal and rest periods after specified hours of work. The only remedy available to employees, however, was injunctive relief aimed at preventing future abuse. In 2000, due to a lack of employer compliance, the [commission] added a pay remedy to the wage orders, providing that employers who fail to provide a meal or rest period 'shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day' that the period is not provided." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105–1106 [56 Cal.Rptr.3d 880, 155 P.3d 284], citations omitted.)

In rejecting an employer's challenge to the meal period requirements of several wage orders, one court explained: "This section [on meal periods] states the circumstances requiring the employer to provide at least a 30-minute meal period [and] when the meal period shall be included in the time worked . . . . The statements describe the history of the section commencing in 1916, that it has been substantially the same since 1947, and provide for exemptions under certain circumstances. [¶] . . . [¶]

"The trial court found, and we agree, that, 'A lesson taught by experience since 1947 concerning a thirty minute [lunch] period, not to mention the fact that no great change in mankind's makeup has been noted in the past thirty years that would indicate he now needs either more or less time to eat than he did thirty years ago both provide an adequate basis [for the orders].'

"Where the evidence clearly supports an existing order, and where the most basic demands of an employee's health and welfare are so obvious, the statement of basis describing the history and confirming the finding is sufficient to permit meaningful judicial review. When stating the obvious[,] little detail is required." (*California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 114–115 [167 Cal.Rptr. 203].)

The same court addressed the validity of rest periods: "This section [of the wage orders] provides a mandatory 10-minute rest period net, for every 4 hours work, without wage deductions.

"The statements trace the history of the section, commencing in 1932, and reaffirm that the requirement is reasonable and minimal. [¶] . . . [¶]

"Employee welfare demands in this area are . . . obvious . . . . Just as the consumption process is essential to humankind, so is the elimination process, and these needs have not greatly changed in the last 40 years. [Regarding] the length of the rest period, it is sufficient to state that experience has shown that

10 minutes is reasonable." (*California Manufacturers Assn. v. Industrial Welfare Com., supra*, 109 Cal.App.3d at p. 115.)

As for the statutory basis for the wage order in this case, section 226.7 states: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

"(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

Under section 516, "the Industrial Welfare Commission may adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers."

In language that closely parallels section 512, subdivision (a), the Wage Order states: "(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

"(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

"(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

"(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall

pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided. [¶] . . . [¶]

"(F) [This] section shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the agreement expressly provides for meal periods for those employees . . . ." (Wage Order, § 11(A)–(D), (F).)

▊ Thus, if the employee works a "short" day—six hours or less—a meal period is unnecessary if the employer and employee so agree. There is no contention here that Franco, or any employee he seeks to represent, worked a short day.

On the subject of rest periods, the Wage Order states: "(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

"(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

"(C) This section shall not apply to any public transit bus driver covered by a valid collective bargaining agreement if the agreement expressly provides for rest periods for those employees . . . ." (Wage Order, § 12(A)–(C).)

Athens contends that *Discover Bank* and *Gentry* are not applicable here because meal and rest periods are *waivable* statutory rights. Actually, in *Discover Bank*, the court expressed a lack of concern with waivability, noting that "plaintiff does not plead a [cause of action under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.)] and so does not invoke its antiwaiver provision; nor does he seek recovery under any other California statute as to which a class action remedy is essential. . . . Rather, plaintiff contends that class action or arbitration waivers in consumer contracts, and in this particular contract, should be invalidated as unconscionable under California law." (*Discover Bank, supra*, 36 Cal.4th at p. 160, citation & fn. omitted.)

 *Gentry*, on the other hand, emphasized that overtime compensation is unwaivable. (See *Gentry, supra*, 42 Cal.4th at pp. 450, 455–457.) " 'Entitlement to overtime compensation . . . is mandated by statute and is based on an important public policy. . . . "The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. . . . California courts have long recognized [that] wage and hours laws 'concern not only the health and welfare of the workers themselves, but also the public health and general welfare.' " ' " (*Id.* at p. 456.) "[T]he statutory right to receive overtime pay embodied in section 1194 is unwaivable." (*Ibid.*)

"We have not yet considered whether a class arbitration waiver would lead to a de facto waiver of statutory rights, or whether the ability to maintain a class action or arbitration is 'necessary to enable an employee to vindicate . . . unwaivable rights in an arbitration forum.' . . . We conclude that under some circumstances such a provision would lead to a de facto waiver and would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws." (*Gentry, supra*, 42 Cal.4th at p. 457, citation omitted.)

Section 226.7, subdivision (a), requires employers to comply with the meal and rest period provisions of the Wage Order. That section appears in division 2 ("Employment Regulation and Supervision"), part 1 ("Compensation"), chapter 1 ("Payment of Wages"), article 1 ("General Occupations") of the Labor Code. Section 219, found in the same article as section 226.7, states: "[N]o provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied."

 As the Ninth Circuit has explained: "[T]he [California] Labor Code provisions at issue, [primarily sections 226.7 and 512,] as well as the wage order, are designed to protect individual employees. Indeed, meal period provisions address some of 'the most basic demands of an employee's health and welfare.' . . . Moreover, the text of the wage order and the statutory provisions . . . make clear that the right to meal periods is a generally applicable labor standard that is *not subject to waiver by agreement*. As stated plainly in § 219, the right cannot 'in any way be contravened or set aside by a private agreement, whether written, oral or implied.' " (*Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, 1081, citation omitted, italics added.) Thus, to the extent *Gentry, supra*, 42 Cal.4th 443, may be limited to unwaivable statutory rights, it applies here because, under section 219, the meal and rest period laws cannot be waived.

## 2. *The* Gentry *Factors*

*Gentry* pointed out that "although '[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses' . . . such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy. [The plaintiff] argues persuasively that class action waivers in wage and hour cases and overtime cases would have, at least frequently *if not invariably,* [an] exculpatory effect for several reasons, and would therefore undermine the enforcement of the statutory right to overtime pay.

"First, individual awards in wage-and-hour cases tend to be modest. In addition to the fact that litigation over minimum wage by definition involves the lowest-wage workers, overtime litigation also usually involves workers at the lower end of the pay scale, since professional, executive, and administrative employees are generally exempt from overtime statutes and regulations." (*Gentry, supra,* 42 Cal.4th at pp. 457–458, citation omitted, italics added.)

Franco was a trash truck driver. When he left Athens in May 2006, he was earning $15.50 an hour. His total damages for the meal and rest period violations, as alleged, come to approximately $7,750, plus $2,500 in civil penalties—an amount too high for a small claims action (Code Civ. Proc., § 116.221) and too low, as a practical matter, to be pursued as an individual claim, either in court or through arbitration. And the possibility of an award of attorney fees would not provide a sufficient incentive for an attorney to take a case like Franco's as an individual matter. (See, e.g., §§ 1194, subd. (a) [authorizing award of attorney fees], 218.5 [same], 2699, subd. (g)(1) [same].) "Even assuming that such attorney fees were equally available in arbitration, employees and their attorneys must weigh the typically modest recovery, and the typically modest means of the employees bringing . . . lawsuits, with the risk of not prevailing and being saddled with the substantial costs of paying their own attorneys. Moreover, the award of 'reasonable' fees and costs is at the discretion of the trial court. Assuming that the arbitrator had similar discretion, there is still a risk that even a prevailing plaintiff/employee may be undercompensated for such expenses." (*Gentry, supra,* 42 Cal.4th at pp. 458–459.) Consequently, with respect to the amount of a plaintiff's potential recovery, overtime cases such as *Gentry* are legally indistinguishable from meal and rest period cases. If anything, overtime cases have a higher value. And here, even if Franco's overtime claim is included in the analysis—raising his total potential recovery to $26,500—the class arbitration waiver would fare no better. (See *id.* at p. 458 [individual recovery of $37,000 provides insufficient incentive to obviate need for class action].)

Second, "a *current* employee who individually sues his or her employer is at greater risk of retaliation. We have recognized that retaining one's employment while bringing formal legal action against one's employer is not 'a viable option for many employees.' . . . The difficulty of suing a *current* employer is likely greater for employees further down on the corporate hierarchy." (*Gentry, supra,* 42 Cal.4th at pp. 459–460, citations omitted, italics added.)

Of course, Franco is no longer working at Athens. But that simply strengthens his status as the representative in a *class* action or *class* arbitration because "it is 'reasonably presumed' that potential class members *still employed* by [the] employer 'might be unwilling to sue individually or join a suit for fear of retaliation at their jobs.' " (*Gentry, supra,* 42 Cal.4th at p. 460, italics added.) " '[S]ince here a number of putative members [of the class] are *current* employees, the concern for possible employer reprisal action exists . . . .' " (*Ibid.,* italics added.) "[I]f individual joinder were required, ' "most, if not all, of the *current* employees will be hesitant to join." ' " (*Ibid.,* italics added.) As one court has noted, " ' "Although there is only plaintiff's *suggestion* of intimidation in this instance, the nature of the economic dependency involved in the employment relationship is *inherently* inhibiting." ' " (*Ibid.,* italics added.) "[F]ederal courts have widely recognized that fear of retaliation for individual suits against an employer is a justification for class certification in the arena of employment litigation . . . ." (*Ibid.*)

Athens's focus on the mere existence of its nonretaliation policy misses the mark. The pertinent question is whether a nonretaliation policy achieves its goal. Franco's declaration stated he "did not feel secure enough to complain about anything [he] may have felt was wrong . . . . [He] felt that if [he] complained about anything [he]would be fired." According to Athens's evidence, employees felt comfortable going to the payroll department to report a calculation error in a paycheck or a shortage in pay "for a certain day or week." But the issue here is how the company would react to an internal grievance asserting the violations raised in Franco's civil complaint, namely, the wholesale disregard of the meal and rest period laws as to numerous employees over an extended period of time. As recognized in an analogous context: "[S]tatistics are supportive of [the] position that retaliation against employees for asserting statutory rights under the Labor Code is widespread. Given that retaliation would cause immediate disruption of the employee's life and economic injury, and given that the outcome of the [Labor Commissioner's] complaint process is uncertain, we do not believe the existence of an antiretaliation statute and an administrative complaint process undermines [the plaintiff's] point that fear of retaliation will often deter employees from individually suing their employers." (*Gentry, supra,* 42 Cal.4th at p. 461.) The same fear and deterrence exist despite an employer's voluntarily adopted nonretaliation policy.

Third, "some individual employees may not sue because they are unaware that their legal rights have been violated. . . . [I]t may often be the case that the illegal employer conduct escapes the attention of employees." (*Gentry, supra*, 42 Cal.4th at p. 461.) Athens may have taken steps, including bilingual efforts, to implement the meal and rest period laws, but Franco—who appears to be more proficient in Spanish than English—did not know there was a remedy for a missed meal or rest period. "Some workers, particularly [those] with limited English language skills, may be unfamiliar with [labor] laws." (*Ibid.*) In a class proceeding, current and former employees would receive written notice of their rights.

Last, " 'class actions may be needed to assure the effective enforcement of statutory policies even though some claims are large enough to provide an incentive for individual action. While employees may succeed under favorable circumstances in recovering [for] unpaid [missed breaks] through a lawsuit or a wage claim filed with the Labor Commissioner, a class action may still be justified if these alternatives offer no more than the prospect of "random and fragmentary enforcement" of the employer's legal obligation[s] . . . .' . . . 'By preventing "a failure of justice in our judicial system" . . . , the class action not only benefits the individual litigant but serves the public interest in the enforcement of legal rights and statutory sanctions.' . . . In other words, absent effective enforcement, the employer's cost of paying occasional judgments and fines may be significantly outweighed by the cost savings of not paying [for missed meal and rest periods]." (*Gentry, supra*, 42 Cal.4th at p. 462, citations omitted, bracketed material added.) As stated in one of Franco's three attorney declarations, "preventing class proceedings from occurring will only allow this and other employers to pay the claims of a few employees, if any, and continue violating the Labor Code unabated."

■ The *Gentry* court summarized: "[W]hen it is *alleged* that an employer has *systematically* denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration. If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their]

unwaivable rights in an arbitration forum.' . . . The kind of inquiry a trial court must make is similar to the one it already makes to determine whether class actions are appropriate. '[T]rial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action . . . .' . . . Class arbitration must still also meet the 'community of interest' requirement for all class actions, consisting of three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Gentry, supra,* 42 Cal.4th at pp. 463–464, citations & fn. omitted, italics added.) As one treatise has noted: "Attempts by employers to bar class actions of wage and hour claims through private arbitration agreements are less likely to be successful [after *Gentry*]." (1 Advising Cal. Employers and Employees (Cont.Ed.Bar 2008) § 5.93, p. 470.)

Here, the complaint alleges that Athens systematically denied meal and rest periods to a class of employees; all drivers were subjected to identical violations; and drivers were not paid an hour of additional compensation per workday for the meal and rest periods they missed. As in *Gentry*, the size of the potential individual recovery is small, the possibility of retaliation against an employee who files an individual suit exists, and absent members of the class may be ill informed about their rights.

In the trial court, Athens submitted evidence to the effect that it does not violate the law. For example, the company president commented, "Athens' policy is to comply with the requirements of the [Wage Order] that are applicable to its drivers, and the company has undertaken a number of practices to ensure compliance with this policy." But this type of evidence goes to the merits of Franco's claims and is not to be considered on a petition to compel arbitration that involves a challenge to a class arbitration waiver. (See *Gentry, supra,* 42 Cal.4th at p. 463; *Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at pp. 439–441; *Graphic Arts Internat. Union v. Oakland Nat. Engraving Co.* (1986) 185 Cal.App.3d 775, 776, 780 & fn. 6 [230 Cal.Rptr. 95].)[1]

We conclude the record does not support the trial court's determination that the employees' claims would be so individualized as to render class arbitration treatment significantly less effective than individual arbitrations. At this early stage in the litigation, we know that Athens uses a computer and an electronic timecard system to keep track of its employees' work hours.

---

[1] In *Brinker Restaurant Corp. v. Superior Court* (2008) 165 Cal.App.4th 25 [80 Cal.Rptr.3d 781], review granted October 22, 2008, S166350, the Supreme Court will address an issue concerning the merits of meal and rest period claims, namely, the scope of an employer's duty to ensure that employees take statutorily mandated breaks. The parties to this appeal agree that the issue in *Brinker* is not relevant here.

By law, an employer must maintain time records showing an employee's (1) "total daily hours worked" and (2) meal periods, unless "operations cease" during meals. (Wage Order, § 7(A)(3).) Further, Athens allegedly engaged in a *systematic* course of illegal payroll *practices and policies* in violation of the Labor Code and subjected *all* of its hourly employees to the same unlawful conduct. As a result, common questions of law and fact predominate over individualized issues.

Here, class treatment would be more practical than individual actions, regardless of whether the claims are adjudicated through arbitration or in the trial court. (See *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1201, 1204–1208 [76 Cal.Rptr.3d 804] [reversing trial court's denial of class certification in meal and rest period case, concluding that requirements of commonality, ascertainability, and superiority were all satisfied].) As stated in *Bufil*: "The trial court made a passing, perfunctory reference to superiority in its order denying class certification [of the meal and rest period claims], finding that plaintiffs did not establish that the class action is a superior method for resolving the litigation. Courts regularly certify class actions to resolve wage and hour claims. . . . In this arena the class action mechanism allows claims of many individuals to be resolved at the same time, eliminates the possibility of repetitious litigation and affords small claimants with a method of obtaining redress for claims which otherwise would be too insignificant to warrant individual litigation. . . . Moreover, the issues slated for contest are primarily common issues involving common evidence. It would not be efficient or fair to relegate these complaints to multiple trials." (*Id.* at p. 1208, citations omitted.)

C. *Franco's Capacity as a Private Attorney General*

If the sole problem with Athens's arbitration agreement were the class arbitration waiver, we would direct the trial court to strike the waiver and order the case to arbitration. (See *Gentry, supra,* 42 Cal.4th at p. 466.) Shortly after appointment, the arbitrator, applying AAA rules, would decide whether the dispute should proceed as a class arbitration. But the class arbitration waiver is not the only significant problem with the parties' agreement.

■ "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. . . . [¶] . . . [M]ultiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124 [99 Cal.Rptr.2d 745, 6 P.3d 669] [equating "multiple" defects with two unlawful provisions].)

The parties' arbitration agreement not only contains a class arbitration waiver but also prohibits an employee from acting as a "private attorney general." The PAGA authorizes an aggrieved employee—here, Franco—to recover civil penalties "on behalf of himself . . . and other current or former employees." (§ 2699, subd. (a).) The agreement does state, however, that employees may recover remedies due them "individually." We interpret this to mean that, under the PAGA, Franco could recover civil penalties for the violation of *his* rights. But the PAGA also authorizes Franco to collect civil penalties on behalf of *other current and former employees*. The arbitration agreement expressly prohibits this. Accordingly, if the class arbitration waiver were stricken, the case were sent to arbitration, and the arbitrator certified the case as a class, the arbitration agreement would preclude an award of civil penalties on behalf of employees *other than* Franco.

The Legislature has made clear that an action under the PAGA is in the nature of an enforcement action, with the aggrieved employee acting as a private attorney general to collect penalties from employers who violate labor laws. Such an action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct. Restitution is not the primary object of a PAGA action, as it is in most class actions. Before the PAGA was enacted, an employee could recover damages, reinstatement, and other appropriate relief but could not collect civil penalties. The Labor and Workforce Development Agency (LWDA) collected them. The PAGA changed that. (See 1 Advising Cal. Employers and Employees, *supra*, §§ 5.97–5.100, pp. 472.3–474 [discussing PAGA].)

Our colleagues in Division Three have observed: "The PAG Act provides in relevant part at section 2699, subdivision (a): '*Notwithstanding any other provision of law*, any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the [LWDA] or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, *may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees . . . .*' . . .

". . . [T]he PAG Act empowers or deputizes an aggrieved employee to sue for civil penalties 'on behalf of himself or herself and other current or former employees' (§ 2699, subd. (a)), as an alternative to enforcement by the LWDA.

"The Legislature declared its intent as follows: '(c) Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future. [¶] (d) *It is therefore in the public interest to provide that civil*

*penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general,* while also ensuring that state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken pursuant to this act.' . . .

"The final bill analysis for the 2003 legislation states: 'This bill allows employees to sue their employers for civil penalties for employment law violations. *This bill is intended to augment the enforcement abilities of the Labor Commissioner by creating an alternative "private attorney general" system for labor law enforcement.*' . . .

"The final bill analysis explains: 'Existing law authorizes the [LWDA] . . . to assess and collect civil penalties for violations of the Labor Code, where specified. [¶] Existing law authorizes the Attorney General and other public prosecutors to pursue misdemeanor charges against violators of specified provisions of the code. [¶] Existing law authorizes an individual employee to file a claim with the Labor Commissioner alleging that [the] employer has violated specified provisions of the code, and to sue the employer directly for damages, reinstatement, and other appropriate relief if the Commissioner declines to bring an action based on the employee's complaint. [¶] Existing law further provides that any person acting for itself, its members, or the general public, may sue to enjoin any unlawful, unfair, or fraudulent business act or practice, and to recover restitution and disgorgement of any profits from the unlawful activity. [¶] This bill is entitled the "Labor Code Private Attorneys General Act of 2004," *and establishes an alternative "private attorney general" system for labor law enforcement that allows employees to pursue* **civil penalties** *for employment law violations.*' " (*Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 337–338 [47 Cal.Rptr.3d 614], citations omitted, boldface added.) When a plaintiff employee recovers a civil penalty under the PAGA, 75 percent is distributed to the LWDA "and 25 percent to the aggrieved employees." (§ 2699, subd. (i).) The PAGA defines "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c); see generally Chin et al., Cal. Practice Guide: Employment Litigation (2008) ¶¶ 17:760 to 17:835, pp. 17-120 to 17-126 [discussing PAGA]; 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 324, pp. 416–418 [same].)

"The [PAGA] attempted to remedy the understaffing of California's labor law enforcement agencies by granting employees the authority to bring civil actions against their employers for Labor Code violations. Fearing the state's budget crisis [in 2003] would continue to prevent adequate Labor Code enforcement, the Act's sponsors intended to guarantee 'maximum compliance

with state labor laws in the underground economy and to ensure an effective disincentive for employers to engage in unlawful and anticompetitive business practices.' Thus, under the Act, employees supplement the LWDA as Labor Code enforcers by 'deputizing' employees in the role of private attorney generals." (Review of Selected 2004 California Legislation, *Chapter 221: A Necessary But Incomplete Revision of the Labor Code Private Attorneys General Act* (2005) 36 McGeorge L.Rev. 877, 878–879, fns. omitted.) "In practice, an equilibrium between public and private enforcement actions will likely develop, leading to more thorough enforcement of the Labor Code and thereby the fulfillment of the Legislature's purpose in enacting the [PAGA]." (*Id.* at p. 894.) "[The] PAGA [is] a powerful tool for aggrieved employees." (Schloss & Cohorn, *Assessing the Amended Labor Code Private Attorneys General Act* (Feb. 2006) 28 L.A. Law. 13, 17.)[2]

In addressing the amount of the civil penalty for a Labor Code violation, the PAGA states: "For all provisions of this code *except those for which a civil penalty is specifically provided*, there is established a civil penalty for a violation of these provisions, as follows: [¶] . . . [¶] . . . If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." (§ 2699, subd. (f)(2), italics added.) "Person" means "any person, association, organization, partnership, business trust, limited liability company, or corporation." (§ 18; see § 2699, subd. (b).)

 Consequently, the question arises as to whether the additional hour of compensation for missed meal and rest periods is "a civil penalty . . . specifically provided" in section 226.7, which was enacted in 2000. (See Stats. 2000, ch. 876, § 7.) If so, the additional hour of pay may qualify as the civil penalty imposed under the PAGA. But our Supreme Court has held that the extra hour of compensation is a wage or premium pay, not a penalty. (See *Murphy v. Kenneth Cole Productions, Inc., supra,* 40 Cal.4th at pp. 1099, 1102–1111.) "[A]n employee is entitled to the additional hour of pay immediately upon being forced to miss a rest or meal period. In that way, a payment owed pursuant to section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime. . . . By contrast, Labor Code provisions imposing penalties state that employers are 'subject to' penalties and the employee or Labor Commissioner must first take some action to

---

[2] The Supreme Court is currently considering whether a PAGA suit that requests civil penalties on behalf of the plaintiff and other employees must be brought as a class action (*Arias v. Superior Court*█ (Cal.App.) review granted Oct. 10, 2007, S155965). Franco seeks to maintain the present case as a class action.

enforce them. The right to a penalty, unlike section 226.7 pay, does not vest until someone has taken action to enforce it." (*Murphy*, at p. 1108, citation omitted.)

That brings us, finally, to the penalties set forth in the Wage Order: "(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:

"(1) Initial Violation—$50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.

"(2) Subsequent Violations—$100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.

"(3) The affected employee shall receive payment of all wages recovered." (Wage Order, § 20(A)(1)–(3).)

Accordingly, the Wage Order specifically provides civil penalties for violations of section 226.7. In fact, those penalties became operative in 2001, three years before the PAGA went into effect. (See *Murphy v. Kenneth Cole Productions, Inc., supra*, 40 Cal.4th at pp. 1105–1106 & fn. 8; Stats. 2003, ch. 906, § 2; Cal. Const., art. IV, § 8, subd. (c)(1); History, Cal. Code Regs., foll. tit. 8, § 11090; compare Cal. Code Regs., tit. 8, § 11090, subd. 20, Register 97, No. 32 (Aug. 8, 1997) with *id.*, tit. 8, § 11090, subd. 20, Register 2002, No. 19 (May 10, 2002).)

Here, under the arbitration agreement, Athens sought to nullify the PAGA and preclude Franco from seeking civil penalties on behalf of other current and former employees, that is, from performing the core function of a private attorney general. Yet, by prohibiting enforcement of the PAGA, the arbitration agreement impedes *Gentry*'s goal of "comprehensive[ly] enforc[ing]" a statutory scheme through the imposition of " 'statutory sanctions' " and "fines." (*Gentry, supra*, 42 Cal.4th at pp. 463, 462.) Thus, the prohibition of private attorneys general is invalid.

Because the arbitration agreement contains a class arbitration waiver and also precludes Franco from seeking civil penalties on behalf of other employees, contrary to the PAGA, we conclude that the agreement as a whole is tainted with illegality and is unenforceable. (See *Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th at pp. 124–125.) Athens's petition to compel arbitration should therefore be denied, and this case should proceed in a court of law.

## III

## DISPOSITION

The order granting the petition to compel arbitration is reversed, and the trial court is directed to place this case on the civil active list. Plaintiff is entitled to costs on appeal.

Rothschild, J., and Bauer, J.,* concurred.

A petition for a rehearing was denied April 1, 2009, and on March 18, 2009, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 17, 2009, S172223.

---

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.