Filed 3/11/15 Unmodified version attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDIXON FRANCO, | B232583 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC369201) |
| v. | |
| ARAKELIAN ENTERPRISES, INC., | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on February 26, 2015, be modified as follows:

On page 1, the counsel listing for Defendant and Appellant shall read as follows:

"Hill, Farrer & Burrill, Kyle D. Brown, James A. Bowles and E. Sean McLoughlin; Gibson, Dunn & Crutcher, Julian W. Poon and Jesse A. Cripps for Defendant and Appellant."

On page 13, second full paragraph, lines 21 and 22, the case cited as "*Iskanian*, *supra*, 206 Cal.App.4th at pp. 959-961" shall be removed.

There is no change in judgment.

CERTIFIED FOR PUBLICATION.

_____

ROTHSCHILD, P. J.                    CHANEY, J.                    JOHNSON, J.

Filed 2/26/15 (foll. transfer from Supreme Ct.) Unmodified version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDIXON FRANCO, | B232583 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC369201) |
| v. | |
| ARAKELIAN ENTERPRISES, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John A. Kronstadt, Judge.  Reversed with directions.

Hill, Farrer & Burrill, Kyle D. Brown, James A. Bowles and E. Sean McLoughlin for Defendant and Appellant.

Rastegar & Matern, Matthew J. Matern, Farzad Rastegar and Thomas S. Campbell for Plaintiff and Respondent.

_____

Our Supreme Court has transferred this matter to us with directions to vacate our decision filed November 26, 2012 and to reconsider the cause in light of *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*).[1]

Following the rule announced in *Iskanian*, we reverse and remand with directions the trial court's order denying the petition of defendant Arakelian Enterprises, Inc. (Arakelian) to compel arbitration of the plaintiff's claims for individual and class action relief, and for representative relief under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, §§ 2698-2699.5) (PAGA).[2]

## BACKGROUND

This matter comes before us for the third time. The facts are taken from our opinion and the record in *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277 (*Franco I*), and the exhibits filed in connection with the second petition to compel arbitration following the *Franco I* decision, with reference to our (now-vacated) November 26, 2012 opinion in *Franco v. Athens Disposal Co., Inc.* (2d civ. No. B232583) (*Franco II*).

**The complaint**

On April 9, 2007, plaintiff Edixon Franco filed a lawsuit individually and on behalf of other similarly situated current and former employees, alleging his status as an employee of "Athens Disposal Company, Inc., dba Athens Services" (Athens Services). In the first through fourth and sixth causes of action, Franco brought claims as an individual and putative class representative, seeking relief against Athens Services based on his employment as a nonexempt hourly employee, alleging that Athens Services

---

[1] The United States Supreme Court denied certiorari in *Iskanian*. (*CLS Transp. L.A., LLC v. Iskanian* (U.S. Jan. 20, 2015) 2015 U.S. Lexis 735.

[2] Statutory references are to the Labor Code unless otherwise specified.

engaged in systematic and illegal Labor Code and wage-order violations.[3] In the fifth cause of action, Franco sued in a representative capacity under the PAGA, seeking civil penalties for Athens Services' violations of its Labor Code obligations to Franco and other current and former employees. (*Franco I*, *supra*, 171 Cal.App.4th at p. 1283.) The sixth cause of action alleged a violation of the California unfair competition law. (Bus. & Prof. Code, § 17200 et seq.)

**First petition to compel arbitration**

On June 22, 2007, Athens Services petitioned to compel arbitration and to dismiss or stay the civil action. The petition stated that Athens Services was in the business of trash removal, hauling, disposal, and recycling, and that it was engaged in interstate commerce within the meaning of the Federal Arbitration Act (9 U.S.C. §§ 1-16).

According to Franco, he was employed by Athens Services from May 20, 2005, to May 12, 2006. (*Franco I*, *supra*, 171 Cal.App.4th at p. 1285.) In August 2005, he had signed an "Employee Agreement to Arbitrate" as a condition of his employment, which acknowledged his receipt and review of the Athens Services' Mutual Arbitration Policy (MAP). The MAP provided (so far as relevant here) that it "will govern all existing or future disputes between you and the Company that are related in any way to your employment;" that it "covers all disputes relating to or arising out of an employee's employment with the Company or the termination of that employment;" that the mutual obligation to arbitrate claims "means that both you and the Company are bound to use the

---

[3] Franco alleged that Athens Services engaged in systematic illegal payroll practices and policies involving all of its hourly employees, in violation of the Labor Code; that it violated sections 510 and 1194 by failing to pay overtime; that it violated section 226.7 and the applicable Industrial Welfare Commission wage order, No. 9-2001, (Cal. Code Regs., tit. 8, § 11090), by failing to provide required meal periods and failing to pay additional compensation for missed meal periods; that (in a separate violation of § 226.7 and the wage order) Athens Services failed to provide rest periods and failed to pay additional compensation for missed rest periods; and that Athens Services violated sections 226, 1174, and 1174.5, and the wage order, by failing to provide necessary payroll information to employees and failing to maintain required employee records.

3

MAP as the only means of resolving any employment-related disputes," and that "both you and the Company forego and waive any right to join or consolidate claims in arbitration with others or to make claims in arbitration as a representative or as a member of a class or in a private attorney general capacity . . . ." But it also provided that "No remedies that otherwise would be available to you individually or to the Company in a court of law, however, will be forfeited by virtue of this agreement to use and be bound by the MAP," and that the parties retain the right to use small claims court. (*Id.* at p. 1284.)[4]

Athens Services' petition to compel arbitration alleged that arbitration was required under the MAP agreement. (*Franco I*, *supra*, 171 Cal.App.4th at pp. 1283-1284.) Its petition was supported by declarations, including that of the president of "Athens Disposal Company, doing business as Athens Services," alleging Franco's employment by Athens Services as a waste truck driver, and his (and all other Athens Services waste hauling drivers') exemption from California's overtime wage laws and regulations. (*Id.* at p. 1285.)

In opposition to the petition, Franco submitted expert and other declarations to show that his wage and hour claims can be heard only as a class action, whether in court or in arbitration, because of the small size of each individual claim and the unavailability of legal representation for the prosecution of such claims. If arbitration were required, the experts contended, the result would be an inability to deter Arakelian and other such employers from continuing their Labor Code violations. (*Franco I*, *supra*, 171 Cal.App.4th at pp. 1298-1299.)

---

[4] When Franco was initially hired on May 20, 2005, he was given an Athens Services Employee Guide, which required arbitration of "[a]ny claim or controversy that arises out of or relates to the interpretation, application or enforcement of this agreement or any other matter concerning or relating to the employment relationship between the Employer and Employee . . . ," but it did not expressly prohibit an employee from consolidating claims, pursuing a class action or other representative action, being a class representative or a member of a class, or acting as a private attorney general. Athens Services' initial motion to compel arbitration did not mention the May 2005 arbitration provision.

4

The trial court, Elizabeth A. Grimes, Judge, granted the petition to compel arbitration, reasoning that Franco's claims for overtime compensation lacked merit, and that classwide arbitration would not be significantly more effective than individual arbitrations. The court concluded that the Athens Services arbitration program "would not disadvantage any employee who pursued claims through individual arbitration." (*Franco I*, *supra*, 171 Cal.App.4th at p. 1287.) Franco appealed.[5]

**The *Franco I* Appeal**

This court concluded in *Franco I* that the MAP's provisions requiring arbitration and waiving class actions were unenforceable. (*Franco I*, *supra*, 171 Cal.App.4th at pp. 1282, 1303.) Athens Services' petition for review by the California Supreme Court was denied (June 17, 2009, S172223); its petition to the United States Supreme Court for writ of certiorari was denied on January 11, 2010. (*Athens Disposal Co., Inc. v. Franco* (2010) 558 U.S. 1136 [130 S.Ct. 1050, 175 L.Ed.2d 926].) The case returned to the trial court.

**Trial court proceedings following *Franco I***

At a January 22, 2010 status conference, counsel for Athens Services informed the court that Franco's suit had named the wrong defendant: that Athens Disposal Company, Inc., doing business as Athens Services, was not in fact Franco's employer; that Franco's actual employer was Arakelian, doing business as Athens Services. Subsequent discovery responses confirmed that Athens Disposal Company, Inc. had never employed Franco (or apparently anyone else in California) at any relevant time. On March 25, 2010, Franco amended the complaint to add Arakelian, doing business as Athens Services, as a Doe defendant.

On May 17, 2010, Arakelian filed a second petition to compel arbitration, again relying on the August 2005 MAP. The second petition argued that the authorities on which the *Franco I* decision had relied in refusing to enforce the MAP had been overruled

---

[5] The order granting arbitration of individual claims and holding that class action claims had been waived was appealable in *Franco I* because it was effectively the "death knell" of the class action litigation. (*Franco I*, *supra*, 171 Cal.App.4th at p. 1288.)

by the United States Supreme Court in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662 [130 S.Ct. 1758, 177 L.Ed.2d 403] (*Stolt-Nielsen*), rendering the MAP enforceable. Arakelian argued in the alternative that even if the MAP was not enforceable (i.e., even if *Stolt-Nielsen* did not overrule *Franco I*), the trial court should compel arbitration based on the pre-MAP arbitration provision in the Athens Services Employee Guide, which Franco acknowledged receiving when he was hired in May 2005.

Franco opposed the second arbitration petition on the same grounds as the original petition, arguing that our *Franco I* decision is decisive under the law of the case doctrine, even though Arakelian was not then a named defendant, because Arakelian is estopped to deny it was in privity with the named defendant, and because *Stolt-Nielsen* did not constitute a change in the law that would preclude application of the law of the case doctrine.

On September 13, 2010, the trial court (John Kronstadt, Judge) heard argument and indicated its denial of the petition for arbitration. On April 11, 2011, the court filed a comprehensive order denying the petition, identifying two grounds for its ruling: (1) the law of the case doctrine requires enforcement of the *Franco I* decision denying arbitration; and (2) Arakelian waived its right to compel arbitration by failing to identify itself as Franco's true employer until after its lawyers had prosecuted the original petition to compel arbitration and exhausted the appellate process.

**The *Franco II* appeal**

Arakelian appealed, this time from the April 11, 2011 order. The central question in that appeal was whether the decision of the California Supreme Court in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), on which our decision in *Franco I* had relied, was abrogated by the decisions of the United States Supreme Court in *Stolt-Nielsen, supra*, and *AT&T Mobility v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 179 L.Ed.2d 742] (*Concepcion*). This court's decision in *Franco II* affirmed the trial court's denial of the defendant's second petition to compel arbitration, holding that the *Stolt-Nielsen* and *Concepcion* decisions did not overrule the *Gentry* decision, and that the MAP's agreement to forego class actions and private attorney general actions is

6

unenforceable. (*Franco II*, *supra*.) (The *Franco II* decision did not address the effect, if any, of Arakelian's delay in identifying itself as Franco's true employer.)

However, our Supreme Court granted review of the *Franco II* decision, deferring action until disposition of a related issue in *Iskanian*, *supra,* 59 Cal.4th 348. After deciding *Iskanian,* it transferred the cause back to this court with directions to vacate and reconsider our *Franco II* decision in light of *Iskanian.*

## DISCUSSION

The central issue in this appeal concerns the impact of the *Iskanian* decision on the trial court's determination that the MAP's agreement to forego representative and class actions is unenforceable: whether the trial court erred in refusing to compel arbitration of Franco's claims against Arakelian for individual and class action relief, and his claim for relief under the PAGA. Because the material facts are not in dispute and the appeal presents an issue of law, our standard of review is de novo. (*W.M. Barr & Co., Inc. v. South Coast Air Quality Management Dist.* (2012) 207 Cal.App.4th 406, 423; *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 940.)

The arbitration provision in this case—the MAP—was imposed on Franco and other employee-members of his putative class as a condition of their employment, and provided that "both the Company and [Franco] agree to forego any right . . . to bring claims on a representative or class basis. . . ."[6] In *Gentry*, our Supreme Court had held that arbitration agreements obtained as a condition of employment, containing class action waivers that limit employees' ability to vindicate statutory protections, are unenforceable as a matter of public policy. Our decision in *Franco I* rested in part on that rule, holding that because employer-imposed agreements are ineffective to waive Labor Code employee protections, the MAP agreement to arbitrate any such employment disputes is unenforceable. (*Franco I*, *supra*, 171 Cal.App.4th at pp. 1290-1294.) In *Franco II*, we

---

[6] The MAP defines "the Company" as "Athens Services . . . or its parent, subsidiary, sister or affiliated companies or entities, and each of its and/or their . . . agents . . . ."

7

held that the rule of *Gentry* on which our *Franco I* decision had relied remained good law, and was not overruled by subsequent decisions of the United States Supreme Court, including the decision in *Concepcion*.

But in *Iskanian*, our Supreme Court held that its *Gentry* decision has been abrogated by the United States Supreme Court's decision in *Concepcion*, which holds that the Federal Arbitration Act, title 9 United States Code section 1 et seq. (FAA) preempts state-law statutory protections such as those shielded from class action waivers under the *Gentry* decision. (*Iskanian*, *supra*, 59 Cal.4th at pp. 364-365.) Under *Concepcion* and *Iskanian*, the public policy behind the vindication of employees' statutory protections must yield to the policy protecting agreements to arbitrate disputes involving interstate commerce. Class action waivers—even waivers that are obtained as a condition of employment and that limit employees' ability to vindicate statutory employee protections—are not categorically invalid or unenforceable.

We are bound by the ruling of our Supreme Court in *Iskanian*. "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)

Under the FAA, the agreement by Franco and his employer to submit their employment disputes to arbitration, and to forego the right to pursue claims on behalf of a class of similarly situated employees, therefore is not rendered unenforceable on the grounds we relied upon in *Franco I* and reaffirmed in *Franco II*. The parties' MAP agreement to arbitrate their employment disputes is enforceable unless it is found to be unconscionable on grounds that exists "for the revocation of any contract," within the meaning of the FAA's savings clause. (9 U.S.C. § 2; *Concepcion*, *supra*, 131 S.Ct. at p. 1747; *Iskanian*, *supra*, 59 Cal.4th at pp. 364, 371.)[7] Under this law, as enunciated in

---

[7] The FAA's "savings clause," italicized below, provides that "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a

8

*Iskanian* and discussed below, the MAP's waivers of Franco's right to pursue non-PAGA claims as a class representative are enforceable, precluding the prosecution of those claims in any forum; however Franco's purported waiver of his right to prosecute the statutory claims afforded by the PAGA is unenforceable, and his PAGA claims are not subject to arbitration.

**I.      The Order Denying Arbitration Of Franco's Claims Must Be Reversed.**

**A. The Doctrine Of Law Of The Case Does Not Require Adherence To The *Franco I* Decision.**

The *Franco I* decision held that the MAP's provisions for arbitration and waiving class actions rendered the agreement unenforceable.  The doctrine of law of the case gives finality to appellate decisions, precluding courts from revisiting issues that has been determined in earlier appellate proceedings between the same parties. (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.)  "'"Where a decision upon appeal has been rendered by a District Court of Appeal and the case is returned upon a reversal, and a second appeal comes to this court directly or intermediately, for reasons of policy and convenience, this court generally will not inquire into the merits of said first decision, but will regard it as the law of the case."'" (*Clemente v. State of California* (1985) 40 Cal.3d 202, 211-212.)

The law of the case doctrine cannot be applied in this case to preclude redetermination of the question whether the MAP's waivers are unenforceable, however. That is because the doctrine is not applied where it would lead to unjust results—notably in this case, where there has been an intervening change in the law on which the earlier decision is based. (*Davies v. Krasna* (1975) 14 Cal.3d 502, 507; *Anton v. San Antonio Community Hospital* (1982) 132 Cal.App.3d 638, 647.)

---

controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (9 U.S.C. § 2, italics added.)

Here, the law concerning the enforceability of the parties' arbitration agreement and class action waivers has changed significantly since the *Franco I* decision. The *Iskanian* decision has held that the decision in *Concepcion* precludes an order denying arbitration on the grounds on which we relied in *Franco I*. The law of the case doctrine therefore cannot be applied to avoid redetermination of the questions in that case—whether the MAP's arbitration agreement and class action waivers are unenforceable.

**B. Arakelian's Delay In Identifying Itself As Franco's Employer Did Not Waive Its Right To Compel Arbitration.**

On April 11, 2011, the court denied Arakelian's petition for arbitration of Franco's class action and representative action claims, basing its ruling in part on Arakelian's long delay in identifying itself as Franco's true employer, until after its attorneys had prosecuted the original petition to compel arbitration and exhausted the appellate process. We conclude that the grounds stated by the trial court do not alone justify a determination that Arakelian waived its right to enforce the parties' MAP agreement.

So far as is apparent from the record before us, the trial court's concern was based on Arakelian's delay until January 2010, to disclose that Franco was not employed by the named defendant—"Athens Disposal Company, Inc., dba Athens Services, a California corporation"—but by Arakelian, "doing business as Athens Services." Both entities were represented by the same lawyers.[8] Thus, the entire time the lawyers were representing

---

[8] Franco pointed out that in May 2005, about two years before he filed this case, the Hill firm had appeared on behalf of "Arakelian Enterprises, Inc., dba Athens Services" in a different employment case (*Flores v. Arakelian Enterprises, Inc*. (Super. Ct. L.A. County, 2005, No. BC333940)) (*Flores*). In *Flores*, the lawyers had presented the declaration of the president of "Arakelian Enterprises, Inc. d/b/a Athens Services"; but in this case the declaration of the president of "Athens Disposal Company, Inc., dba Athens Services, a California corporation" represented that Franco had been the company's employee, that it had complied with the Labor Code and wage orders relating to its employees (thereby representing that Athens Disposal Company, Inc. did have employees, including Franco). Judgment was entered in the *Flores* case on July 22, 2010, confirming the arbitration award in Arakelian's favor.

10

"Athens Disposal Company, Inc., dba Athens Services" in this case, the firm knew that the company doing business as Athens Services was Arakelian, not Athens Disposal Company, Inc.  Yet it did not disclose that Arakelian was Franco's employer until after Athens Services had represented otherwise in discovery, and had exhausted all its appellate proceedings unsuccessfully seeking to compel arbitration.

Trial courts unquestionably have authority to impose appropriate sanctions or other remedial measures upon determination that the litigation conduct of a party or its attorneys falls short of that required by the law and applicable rules of ethics.  (Code Civ. Proc., §§ 128.5, 1211, 1212; see *Bauguess v. Paine* (1978) 22 Cal.3d 626, 637.)  But the rules for determining whether a party's conduct constitutes a waiver of its right to enforce an agreement to arbitrate disputes are not the same as those governing the court's right to remedy and punish contempts.  Any doubts about whether a party's conduct has waived its right to compel arbitration must be resolved in favor of arbitration.  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195; *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782.)  Although the determination of waiver ordinarily is a question of fact that is binding on the appellate court if it is supported by sufficient evidence, the issue is one of law requiring de novo determination when the facts are undisputed and only one inference may reasonably be drawn.  (*St. Agnes Medical Center v. PacifiCare of California*, *supra*, 31 Cal.4th at p. 1196.)

Past cases have found a waiver of the right to compel arbitration in situations ranging from those in which after a dispute has arisen the party seeking arbitration has taken steps that are inconsistent with an intention to invoke arbitration, has unreasonably delayed undertaking the arbitration procedure, or has acted in bad faith or willful misconduct with respect to its arbitration rights—for example, by misleading and prejudicing the party opposing arbitration.  (*St. Agnes Medical Center v. PacifiCare of California*, *supra*, 31 Cal.4th at pp. 1196, 1203; *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992.)  Prejudice typically is found only where conduct of the petitioning party has substantially impaired the other party's ability to obtain the benefits and efficiencies of arbitration, for example, when the party has unreasonably delayed seeking

11

arbitration (e.g., *Sobremonte v. Superior Court*, *supra*, 61 Cal.App.4th at pp. 995-996); where the party has exploited trial court discovery procedures that would be unavailable to it in arbitration (e.g., *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1366); or where delay by the petitioning party has resulted in lost evidence (e.g., *Christensen v. Dewor Developments*, *supra*, 33 Cal.3d at pp. 783-784 [waiver found where party filed suit without arbitration demand and pursued litigation for admitted purpose of obtaining verified pleadings that would reveal opposing party's litigation theories]).

In the absence of evidence that would further explicate the impact and prejudice (if any) resulting from inaccurate or misleading representations concerning Franco's employment, and Arakelian's failure to earlier identify itself as Franco's employer, the record presently discloses no conduct that could justify the trial court in determining that Arakelian has waived its arbitration rights under the MAP provision. The record shows no evidence of trial court discovery or motion procedures that exceed or are inconsistent with those to which the parties would be entitled in arbitration, or that resulted in prejudice to either party. If Arakelian's belated identification as the true defendant prejudiced Franco's ability to obtain the legitimate benefits of arbitration, that showing has yet to be made. The finding that Arakelian has waived its right to compel arbitration under the MAP procedures is not supported by the record in this appeal.

**C. The Agreement For Arbitration Of Franco's Class Action Claims Does Not Render The Agreement Categorically Unenforceable.**

Section 2 of the FAA—the act's "primary substantive provision" (*Concepcion, supra,* 131 S.Ct. at p. 1745)—states that "'[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2." (*Concepcion, supra,* 131 S.Ct. at p. 1745.) That provision is a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies." Its effect "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement

12

within the coverage of the Act." (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 74 L.Ed.2d 765].) The savings clause, the provision that an arbitration agreement may be found unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," refers to contract defenses such as fraud, duress, or unconscionability. (*Concepcion*, *supra*, 131 S.Ct. at p. 1746.)

In *Gentry*, *supra*, the California Supreme Court held that a waiver of the right to prosecute class actions (whether in court or in arbitration) is invalid and unenforceable under California law, if it is determined that an individual action would not approximate the benefits afforded by a class proceeding. But in *Concepcion*, the United States Supreme Court held otherwise with respect to agreements for the arbitration of employment disputes. It held that class proceedings interfere with fundamental beneficial attributes of arbitration, and therefore are inconsistent with the FAA. They are preempted by the FAA, at least in the absence of an agreement to the contrary. (*Concepcion*, *supra*, 131 S.Ct. at p. 1746; *Iskanian*, *supra*, 59 Cal.4th at pp. 363-365 [FAA preempts state law protections such as those shielded from class action waivers by the *Gentry* decision].)

When the parties have validly elected to resolve employment disputes in arbitration, the ineffectiveness of an individual proceeding for the resolution of their disputes does not render a class action waiver invalid or unenforceable, nor does it render the arbitration agreement itself invalid or unenforceable. The FAA precludes any order requiring class action arbitration of wage and hour claims unless the parties have affirmatively agreed to it. (*Stolt-Nielsen*, *supra*, 559 U.S. 662 [130 S.Ct. 1758, 177 L.Ed.2d 403]; *Iskanian*, *supra*, 206 Cal.App.4th at pp. 959-961.) "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (*Stolt-Nielsen*, *supra*, 130 S.Ct. at p. 1775, original italics.) Here, far from affirmatively agreeing to submit disputes concerning employment wage and hour claims to class action arbitration, the parties have agreed to forego class action treatment of any such claims.

13

We are compelled by these rulings to reverse the trial court's order denying the petition for arbitration on the ground that employer-imposed class action waivers are unenforceable because they limit employees' ability to vindicate statutory employee protections—the grounds set forth in *Franco I* and *Franco II*. (*Iskanian*, *supra*, 59 Cal.4th at pp. 364-365.) If the MAP arbitration provisions are otherwise enforceable, Franco's claims against Arakelian can be prosecuted only in arbitration proceedings of his individual claims, and the agreement's class action waiver provisions preclude enforcement of his class action claims in any forum.

## II. The MAP's Waiver Of Franco's Right To Prosecute Representative Claims Under The PAGA Is Unenforceable.

The PAGA authorizes an employee to bring an action against his or her employer for Labor Code violations committed against the employee and fellow employees, to recover civil penalties provided by the PAGA statute. The action is brought on behalf of the state, which receives most of the resulting penalty proceeds. (§ 2698 et seq.; *Iskanian*, *supra*, 59 Cal.4th at p. 360.) The MAP agreement in this case, like the arbitration agreement in *Iskanian*, precludes an employee's assertion of representative actions, which the parties apparently understood to encompass actions brought under the PAGA. (See *Iskanian*, *supra*, 59 Cal.4th at pp. 361, 378.)

As we have concluded in the preceding section, the parties' MAP agreement is not categorically unenforceable, either by virtue of its waiver of class actions or for the reasons relied upon by the trial court in denying the second petition to compel arbitration. Franco's claims for individual relief are subject to arbitration. However, as we explain below, his representative claims under the PAGA are not.

### A. Franco's Right To Bring A Representative Action Under The PAGA Is Unwaivable Under California Law.

After determining that class-action waivers are enforceable, the court in *Iskanian* turned to the question whether the MAP agreement's waiver of representative actions precludes the employee from prosecuting a PAGA claim—i.e., whether waivers of the right to prosecute PAGA claims are enforceable under state law, and if they are not,

14

whether the FAA preempts that state-law prohibition of enforcement of such waivers. (*Iskanian*, *supra*, 59 Cal.4th at p. 378.)

*Iskanian* answered the first of these questions by holding that as a matter of state law, an employment agreement that compels a waiver of the employee's statutory right to bring representative claims under the PAGA is contrary to public policy and unenforceable. (*Iskanian*, *supra*, 59 Cal.4th at pp. 382-384.) A representative action under the PAGA is not a class action, but rather is a type of qui tam action, in which the employee-plaintiff acts as private attorney general—an agent of the state—while the governmental entity on whose behalf he or she sues is the real party in interest. (*Id.* at p. 382.) In enacting the PAGA, the Legislature declared that it is necessary, and in the public interest, to allow aggrieved employees to act as private attorneys general for the purpose of seeking and recovering civil penalties for Labor Code violations, while labor law enforcement agencies retain the right to control the enforcement efforts and would receive the bulk of any recoveries. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980-981 (*Arias*); *Iskanian*, *supra*, 59 Cal.4th at p. 379.) Under the PAGA, an employee is entitled to bring an action "personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations"—but only if the responsible state agency has declined the opportunity to do so. (§§ 2699, subd. (a), 2699.3, subd. (a); *Arias*, *supra*, 46 Cal.4th at p. 980.) Any penalties recovered are divided, 75 percent going to the state agency and 25 percent to aggrieved employees. (*Arias*, *supra*, 46 Cal.4th at p. 980; *Iskanian*, *supra*, 59 Cal.4th at p. 380.) An action under the PAGA "'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" (*Iskanian*, *supra*, 59 Cal.4th at p. 381; *Arias*, *supra*, 46 Cal.4th at p. 986.) The aggrieved employee sues under the PAGA "as the proxy or agent of the state's labor law enforcement agencies." (*Arias*, *supra*, at p. 986; *Iskanian, supra*, at p. 380.)

Because the rights asserted in an action under the PAGA are those of the state rather than of the plaintiff-employee, the right to prosecute such an action cannot be waived by private agreement. Such an agreement would violate two important provisions of law, which are themselves derived from public policy. Civil Code section 1668 forbids

15

enforcement of any contract that has as its direct or indirect object the exemption of parties from their violations of law. (*Iskanian*, *supra*, 59 Cal.4th at p. 382; *In re Marriage of Fell* (1997) 55 Cal.App.4th 1058, 1065.) And Civil Code section 3513 provides that one may waive the advantages of a law that is intended to benefit just him or her, but "a law established for a public reason cannot be contravened by a private agreement." (*Iskanian*, *supra*, 59 Cal.4th at p. 383; *Armendariz v. Foundation Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83, 100.) A private employer-employee agreement that precludes the state's agents—aggrieved employees acting as private attorneys general—from enforcing the employer's Labor Code obligations and recovering civil penalties on behalf of the state constitutes exactly what Civil Code section 1668 prohibits: a contract that has as its object the exemption of the employer from its violations of the law. And the parties cannot by private agreement waive the benefits of the PAGA, because its primary benefits are public, not private. It is "a law established for a public reason"—the state's interests in enabling enforcement of its labor law standards and in receiving the proceeds of the civil penalties that are imposed in order to deter employer violations. (Civ. Code, § 3513; *Iskanian*, *supra*, at p. 383.) For these reasons it is contrary to policy and the law of this state for an employment agreement to eliminate the ability of aggrieved employees to act on the state's behalf in enforcing its labor laws, as provided by the PAGA. Under the law of this state, an employee's pre-dispute waiver of the right to bring a PAGA action is unenforceable. (*Iskanian*, *supra*, 59 Cal.4th at p. 383.)

The rights afforded Franco by the PAGA are intended primarily to advance the public's interest in deterring employers from violating labor laws established for public benefit. As such, public policy and the laws of this state preclude enforcement of the private agreement purporting to prevent Franco from enforcing the state's interests under the PAGA.[9]

---

[9] Because our decision on this issue rests on the grounds decided in *Iskanian*, we have no occasion to review whether Franco's right to prosecute representative PAGA

16

**B. The State-Law Rule Against Employee Waivers Of PAGA Rights Does Not Frustrate The FAA's Objectives And Is Not Preempted By The FAA.**

The state-law rule against pre-dispute employee waivers of the right to prosecute claims under the PAGA cannot be enforced if the rule "stand[s] as an obstacle to the accomplishment of the FAA's objectives." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) Recognizing that immutable principle of federal law, as clarified and restated by the *Concepcion* case, our Supreme Court examined in *Iskanian* whether the FAA's objectives of ensuring parties' ability to provide for an efficient forum for the economical and speedy resolution of their private disputes is frustrated by the state's policy against enforcement of pre-dispute employee waivers of the rights afforded by the PAGA. (*Id.* at pp. 384-385.)

On that question—whether the law of this state is preempted by the FAA—the court held in *Iskanian* that the state-law rule prohibiting enforcement of agreements waiving the right to bring representative claims under the PAGA does not frustrate the FAA's objective of ensuring an efficient forum for the resolution of private employer-employee disputes, and therefore is not preempted by the FAA. That is because a PAGA action involves a dispute between the employer and the state agency on whose behalf the representative plaintiff acts, rather than a private employer-employee dispute. (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) Based on its in-depth examination of the FAA's objectives as revealed by the statute's legislative history, the court concluded that in an action for civil penalties under the PAGA, "'the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies,'" and "'an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself.'" (*Id.* at p. 387, quoting *Arias*, *supra*, 46 Cal.4th at p. 986.) The bulk of any recovery under the PAGA goes to the state, not to the plaintiff-employee; and the judgment in a PAGA action binds the state just as it binds the employer and the plaintiff-

claims in arbitration would be affected by the MAP's express provision that "No remedies that otherwise would be available to you individually or to the Company in a court of law, however, will be forfeited by virtue of this agreement to use and be bound by the MAP."

employee.  (*Arias*, *supra*, 46 Cal.4th at p. 986; *Iskanian*, *supra*, 59 Cal.4th at p. 387.)

"'[E]*very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.'"  (*Iskanian*, *supra*, 59 Cal.4th at pp. 387, 394.)  "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [state Labor Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code."  (*Id.* at pp. 386-387.)[10]

Based on this analysis, the court in *Iskanian* concluded that California's public policy prohibiting waiver of PAGA claims does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution.  "[T]he FAA aims to promote arbitration of claims belonging to the private parties to an arbitration agreement. It does not aim to promote arbitration of claims belonging to a governmental agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself."  (*Iskanian*, *supra*, 59 Cal.4th at p. 388.)  We therefore hold, as the *Iskanian* decision requires, that the FAA does not preempt California's state-law rule precluding pre-dispute waivers of enforcement rights under the PAGA.[11]

---

[10] In a separate concurring opinion in *Iskanian*, Justices Werdegar and Chin joined the majority decision that the PAGA waiver in *Iskanian* is unenforceable, but based their conclusion on grounds different from those of the other three majority-opinion justices. Their concurring opinion relies on the United States Supreme Court's recognition in *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. ___ [133 S.Ct. 2304, 186 L.Ed.2d 417], of exceptions to the requirement that the FAA preempts the assertion of certain statutory rights, which exceptions are broad enough to encompass the representative-action waiver in *Iskanian*.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 392-394.)

[11] Because "*every* PAGA action," whether seeking penalties as to only one aggrieved employee or as to other employees as well, "is a representative action on behalf

### C. The Unenforceable Agreement Barring Franco's PAGA Claims Does Not Render The MAP Agreement Categorically Unenforceable.

Franco asks that we find the MAP agreement to be unconscionable, and therefore unenforceable, based on the intent it attributes to Arakelian to preclude its employees from obtaining the benefits of the protections and remedies provided by California's PAGA law, in violation of public policy. As discussed above, the court held in *Iskanian* that "it is against public policy for an employment agreement to deprive employees of [the option to enforce the PAGA] altogether, before any dispute arises." (*Iskanian*, *supra*, 59 Cal.4th at p. 387.) We decline to accede to this request.

We need not contemplate whether such a ruling might or might not be appropriate when a party seeking to enforce a pre-dispute arbitration agreement is found to have drafted and obtained the agreement with an intention to thwart public policy. But such a remedy is not appropriate here. Arakelian drafted and obtained the MAP agreement's representative-action waiver in 2005. That was almost a decade before the *Iskanian* decision held that enforcement of such waivers with respect to actions under the PAGA would violate public policy, while their enforcement with respect to class actions would not. From this we are unable to find that the central purpose of the MAP agreement is tainted with illegality, we are unable to conclude that Arakelian predicted the final outcome of the yet-to-be decided *Iskanian* decision, and we are unable to infer from these circumstances an intention on Arakelian's part to thereby thwart public policy. By rendering unenforceable the MAP agreement's bar to Franco's enforcement of the protections afforded by the PAGA, Franco is prevented from gaining undeserved relief from his agreement to arbitrate his individual claims, while Arakelian is prevented from

of the state" (*Iskanian*, *supra*, 59 Cal.4th at pp. 387, 394), Franco's individual PAGA claims are no more subject to his MAP agreement than are his representative claims. For that reason we need not consider Arakelian's concession at oral argument that all the individual and representative PAGA claims would best be adjudicated in the same forum.

19

the undeserved detriment of having its entire agreement voided due to its inclusion of a provision respecting only certain claims; the parties' contractual relationship is preserved, without condoning or accepting an illegal scheme. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1074-1075; *Armendariz v. Foundation Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83, 124.)

## CONCLUSION

The rulings in *Concepcion* and *Iskanian* require that we reverse and remand to the trial court the orders denying Arakelian's petition for arbitration of Franco's claims, with directions to grant the petition for arbitration of Franco's individual claims against Arakelian, while enforcing the parties' contractual agreement to forego any right "to make claims in arbitration as a representative or as a member of a class or in a private attorney general capacity," except that the MAP cannot be enforced to preclude Franco from prosecuting claims against Arakelian under the PAGA in a non-arbitration forum. Because the issues subject to litigation under the PAGA might overlap those that are subject to arbitration of Franco's individual claims, the trial court must order an appropriate stay of trial court proceedings. (Code Civ. Proc., § 1281.4.)[12] The stay's purpose is to preserve the status quo until the arbitration is resolved, preventing any continuing trial court proceedings from disrupting and rendering ineffective the arbitrator's jurisdiction to decide the issues that are subject to arbitration. (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374.)

---

[12] Code of Civil Procedure section 1281.4 provides, as pertinent here, that if arbitration "of a controversy which is an issue involved in an action or proceeding pending before a court of this State" is ordered, the court in which the action or proceeding is pending "shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

20

## DISPOSITION

The order denying Arakelian's petition to compel arbitration is reversed.  The matter is remanded for further proceedings consistent with this opinion.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


CHANEY, J.


We concur:



ROTHSCHILD, P. J.



JOHNSON, J.


21