Filed 12/23/21  P. v. Humdy CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B308820 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA020811) |
| v. | |
| JAMES FLEETWOOD HUMDY, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed on December 9, 2021, be modified as follows:

1.  On page 12, in the single-sentenced paragraph, replace "four" with "five," so that the sentence reads:

    Defendant resists this conclusion with what collapses into five different arguments.

2.  On page 16, in the first sentence of the first full paragraph, replace "Lastly" with "Fourth," so that the sentence reads:

    Fourth, defendant implies that the trial court's finding is suspect because the court did not read the 1995 trial transcript from cover to cover.

3.  After the last sentence on page 16, add the following two paragraphs (including footnote 3):

    Lastly, and for the first time in a petition for rehearing, defendant argues that the newly enacted Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022 (Senate Bill 775), applies to his pending section 1170.95 proceeding and requires us to remand for a new evidentiary hearing. Even if we assume for argument's sake that Senate Bill 775 applies to pending section 1170.95 petitions, Senate Bill 775 does not entitle defendant to a new hearing. To be sure, Senate Bill 775 amended section 1170.95, among other ways, to clarify what evidence a trial court may consider during an evidentiary hearing when determining whether a defendant is entitled to

2

relief under section 1170.95. (Stats. 2021, ch. 551, § 2.) As clarified by Senate Bill 775 and as pertinent here, section 1170.95 permits a trial court to consider all of the "evidence previously admitted at any prior hearing or trial that is admissible under current law"; any "new or additional evidence" the parties seek to introduce at the section 1170.95 hearing if that evidence is admissible under the Evidence Code; and "the procedural history of the case recited in any prior appellate opinion." (*Ibid.*) However, as the analysis we set forth above indicates, the trial court's finding that defendant was the "actual killer" is supported by evidence that fits comfortably within the parameters of section 1170.95 as amended by Senate Bill 775. As noted above, the trial court's "actual killer" finding is supported chiefly by DeJohn's trial testimony; that is clearly admissible under Senate Bill 775. The "actual killer" finding is corroborated by DeJohn's 1994 police interview. Although the content of that interview was not admitted during defendant's trial, it was properly admitted under the Evidence Code as a prior consistent statement because DeJohn's 2020 testimony at the section 1170.95 hearing is inconsistent with DeJohn's 1995 trial testimony and DeJohn's 1994 police interview "was made before the alleged inconsistent statement." (Evid. Code, §§ 1236, 791, subd. (a).)[1] The remaining evidence we

---

[1] There is also no Confrontation Clause issue because DeJohn was available for cross-examination at both the 1995

3

cite in support of our conclusion that the trial court's "actual killer" finding is supported by substantial evidence—namely, the testimony of the security guard, defendant's own testimony, and the evidence of the defendant's threats to kill Mitchell's aunt—was all admitted into evidence at the 1995 trial.

Defendant resists this conclusion with two further arguments. To begin, he argues that the trial court's assertion that it did not read the entire trial transcript means that the court necessarily relied on the recitation of facts in the appellate opinion, which is not allowed under section 1170.95 as amended by Senate Bill 775. This is little more than a regurgitation of defendant's fourth argument. It is also incorrect. Contrary to what defendant's argument seems to suggest, Senate Bill 775 did not modify section 1170.95 to obligate a trial court to read the entire trial transcript once the court mentions having looked at the factual recitation in the prior appellate decision. As noted above, the court read pertinent portions of the trial proceedings and asked the parties to present any further portions they wished the court to consider; the fact that some of those portions were recited in the appellate decision does not render the trial court's finding suspect. Further, defendant argues that several other items of ostensibly inadmissible evidence were presented to the trial court during the section 1170.95 hearing, including (1) the Los Angeles Police

_____

trial and at the 2020 evidentiary hearing.

4

Department's homicide report, (2) a probation report, and (3) the prior appellate decision from Mitchell's case. We need not plumb whether each of these was admissible under the Evidence Code because, even without them, there is substantial evidence to support the trial court's finding that defendant was the actual killer.

\*    \*    \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

LUI, P.J.              CHAVEZ, J.              HOFFSTADT, J.

5

Filed 12/9/21  P. v. Humdy CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES FLEETWOOD HUMDY,<br><br>Defendant and Appellant. | B308820<br><br>(Los Angeles County Super. Ct. No. VA020811) |


APPEAL from an order of the Los Angeles Superior Court, John A. Torribio, Judge.  Affirmed.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

After an evidentiary hearing, the trial court denied the petition for resentencing under Penal Code section 1170.95 filed by James Fleetwood Humdy (defendant).[1]  Defendant argues this was error.  It was not.  We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The underlying crime*

In July 1993, defendant went to Palm Springs with his girlfriend Joyce Mitchell (Mitchell), Mitchell's four-year-old son DeJohn, and his friend Lauren Edward (Edwards).  Defendant was a more established member of the Crips street gang, and Edwards—who was then 16 or 17 years old—was a newer gang member.  Defendant's moniker was "Joker."

The three were strapped for cash and were sleeping on the living room floor of the one-bedroom apartment where Mitchell's aunt lived.  Because Mitchell's car had been impounded while they were in Palm Springs, they had no way back to Los Angeles, where they all lived.

Ready to have them vacate her small apartment, Mitchell's aunt arranged for defendant and the others to hitch a ride back to Los Angeles with one of the aunt's "close friends" and coworkers, a woman named Malea Davidson (Davidson).

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

Davidson and her boyfriend, Peter Chase (Chase), were already planning to drive to Los Angeles, and offered to let them ride in the bed of their truck.

In the mid-afternoon of Friday, July 2, 1993, the group headed back to Los Angeles in Chase's truck. When Chase arrived in the South Los Angeles neighborhood where defendant, Mitchell, and Edwards lived, Chase stopped the truck in the street. Defendant hopped out of the back, pulled out a gun, and ordered Chase and Davidson out of the truck's cab. Defendant directed them to the sidewalk, where he proceeded to shoot Chase twice in the head and to shoot Davidson once in the head and in the back. Chase died instantly; Davidson lived for only another few hours. Defendant and the others drove off in the truck, leaving Davidson to die. The group took Chase's wallet, Davidson's jewelry, and the money Davidson had from the paycheck she had gone to cash with Mitchell's aunt earlier that day.

The truck was recovered a few days later, doused in oil in an attempt to obliterate fingerprints.

A few days later, defendant spoke with Mitchell and Edwards about needing to kill Mitchell's aunt, who had spoken with the police after Davidson's body was found.

B. *Prosecution, sentencing, and appeal*

In 1994, the People charged defendant, Mitchell, and Edwards with the murders and robberies of Chase and Davidson (§§ 187, 211). The People further alleged two special circumstances—namely, that (1) defendant committed the murders in the course of the robberies (§ 190.2, subd. (a)(17)), and (2) defendant committed multiple murders (§ 190.2, subd. (a)(3)).

3

The People charged defendant and Mitchell together; the People charged Edwards separately.

Following his arrest, Edwards told police that *he* had shot Chase and Davidson because Chase became "aggressive to Joker" and because Davidson was also "aggressing" Joker "with some shiny object that [Edwards] took to be a weapon." Beyond indicating that he was eight feet from Chase and 14 to 16 feet from Davidson when he shot them, Edwards was "pretty vague" about the details of the shootings. The prosecutor introduced Edwards's statement at Edwards's preliminary hearing, but did so to establish that Edwards was at the scene and had participated in the robbery, and *not* to establish that Edwards was the shooter. As to Edwards's claim of being the shooter in his postarrest statement, the prosecutor "stipulated" that the claim was "inherently suspect."

Mitchell proceeded to trial separately, and a jury convicted her of both murders and robberies.

Defendant went to trial in mid-June 1995.

During defendant's trial, Mitchell's son DeJohn testified. By that time, he was six years old. He was first called as a witness on the second day of trial. In front of the jury, the prosecutor attempted to get DeJohn to take the oath or to promise to tell the truth, but DeJohn refused. During this colloquy, defendant gave DeJohn a "fixed glaring stare," and DeJohn admitted to being afraid of defendant. The trial court instructed the jury to disregard anything DeJohn said while on the stand. The next day, DeJohn was questioned outside the presence of the jury. This time, DeJohn told the prosecutor that he would "tell us what [he] really thought as to what happened" and would "tell us the truth," and DeJohn then told the judge

4

that he will "tell the truth." The trial court concluded that DeJohn's assurances constituted a promise to tell the truth, and qualified him as a witness. Back before the jury for the second time, DeJohn testified that (1) he had traveled in a truck with his "mama" (Mitchell), Joker, and "some other guy"; (2) the truck parked in the street; (3) Joker had a gun; (4) Joker ordered the white man and white woman out of the truck (Chase and Davidson were both Caucasian), told them to "get on the side walk" and to "lay down" or "get on the floor"; and (5) Joker then shot them. DeJohn identified defendant in the courtroom as Joker.

Defendant was aware of Edwards's statement to police purporting to take the blame for the shootings but elected not to introduce it after the trial court ruled that the prosecutor would be permitted to introduce any portions of the statement necessary to put in context any portions of Edwards's statement defendant introduced.

Defendant then took the stand. He testified that Chase and Davidson had stopped to let them off, and that Edwards unexpectedly pulled out a gun and shot them. This testimony was inconsistent with defendant's postarrest statement, where he said that Chase and Davidson had dropped him off and drove away alive and well.

The trial court instructed the jury that defendant could be found guilty of the murders as (1) the actual killer, (2) a person who, with the intent to kill, directly aided and abetted the actual killer, or (3) a person who participated in the felony robberies, and the killings occurred in the course of those robberies (felony-murder theory).

5

The jury found defendant guilty on all charges and found true both special circumstance allegations.

The trial court sentenced defendant to two consecutive sentences of life without the possibility of parole, and imposed but stayed (under section 654) a five-year prison sentence for each robbery.

Defendant appealed his convictions. As pertinent here, defendant challenged the sufficiency of DeJohn's oath. In an unpublished decision, we affirmed defendant's convictions, and specifically ruled that "DeJohn's oath conformed to the statutory requirements." (*People v. Humdy* (Dec. 19, 1996, B097322).)

## II. Procedural Background

On November 15, 2018, defendant filed a petition for a writ of habeas corpus that, among other things, invoked section 1170.95. The trial court denied the petition on every ground except section 1170.95, construed that ground as a section 1170.95 petition, appointed counsel for defendant, and entertained further briefing. After multiple rounds of briefing, the trial court in June 2020 concluded that defendant had established a prima facie showing of entitlement to relief under section 1170.95 and issued an order to show cause. At that time, the court stated that, at the upcoming evidentiary hearing, it would "use the relevant standard of beyond a reasonable doubt."

The court held an evidentiary hearing over two days in August and September 2020. In addition to the record of conviction from the 1995 trial, defendant submitted two additional items of evidence—namely, (1) a declaration from now-adult DeJohn, who declared that he heard gunshots but did not see who actually fired the gun, and (2) in-court testimony from the now-adult DeJohn, who testified that he "did not see who

6

pulled the trigger" and did not remember seeing defendant holding a gun that night.  The People introduced the transcript from a 1994 police interview of DeJohn, where he stated that he rode in the truck with his mother (Mitchell), Joker, and "somebody else," the truck stopped in the street, Joker ordered the "man" and the "girl" out of the truck and told them to kneel on the ground, and then Joker shot the man and then the "girl."

At the September 2020 hearing, the parties offered extensive argument on the question whether defendant was entitled to relief under section 1170.95.  The prosecutor argued that the jury's prior special circumstance finding that the killings occurred during the robberies rendered defendant ineligible for relief as a matter of law.  Defendant argued that the prior special circumstance was *not* binding.  Instead, defendant argued that his entitlement to relief turned on whether there is "proof beyond a reasonable doubt that [defendant is] the actual shooter."  The court ruled that it would, "as the trier of fact," make an "independent" and "de novo" determination whether the record of conviction (as "augment[ed]" at the evidentiary hearing) proved defendant was the actual shooter "beyond a reasonable doubt." The court then responded to the arguments of both parties:  It found defendant was "ineligible as a matter of law," and "also [found] that he was, in fact, the actual shooter."

After the trial court denied his motion for reconsideration, defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his petition for relief under section 1170.95.  Specifically, he argues that the court erred (1) in finding that he was the actual killer because (a) the court used the wrong legal standard, and (b) the

7

finding is in any event unsupported by substantial evidence, and (2) in declaring him ineligible for relief as a matter of law due to the jury's special circumstance finding. Because our resolution of defendant's first argument is dispositive, we have no occasion to reach his second. As to his first argument, we independently review whether the trial court used the proper legal standard and review the court's factual finding for substantial evidence. (*People v. Rodriguez* (2020) 58 Cal.App.5th 227, 237-238.)

Section 1170.95 was enacted as part of Senate Bill No. 1437. With one exception, section 1170.95 retroactively overturns any murder conviction premised on any vicarious liability theory—that is, on the theory that the defendant is guilty of murder for a killing committed by someone else—unless the People prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 1170.95, 188, 189, subds. (e), (f); *People v. Gentile* (2020) 10 Cal.5th 830, 852-853.) Section 1170.95 uses a two-step procedure. In the first step, the nonkiller defendant seeking to vacate his murder conviction must make a "prima facie showing" of entitlement to relief by alleging that he was convicted of murder on a theory of vicarious liability and alleging that he did not act with the requisite personal intent (that is, that he did not act with the intent to kill and was not a major participant who acted with reckless disregard to human life). (§ 1170.95, subds. (c), (a).) If the defendant so alleges, and if the record of conviction does not definitively establish the falsity of his allegations (*People v. Lewis* (2021) 11 Cal.5th 952, 971 [relief may be denied without an evidentiary hearing "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition"'"]), the trial court

8

must issue an order to show cause and convene an evidentiary hearing "to determine whether the petitioner is entitled to relief" under section 1170.95.  (§ 1170.95, subd. (d)(3).)  At that hearing, the prosecutor bears the "burden" of "prov[ing], beyond a reasonable doubt, that the petitioner is ineligible" for relief.  (*Ibid.*)  As we held in *People v. Fortman* (2021) 64 Cal.App.5th 217, 224-225, review granted July 21, 2021 S269228, this means that the defendant is entitled to relief unless "the trial court itself finds, beyond a reasonable doubt, that [the] defendant is guilty of murder on a still-valid theory of liability" because (1) he is the actual killer, (2) he acted with the intent to kill, or (3) he was a major participant and acted with reckless indifference to human life.

## I. Did the Trial Court Apply the Proper Legal Standard?

Defendant asserts that the record is "ambiguous" and that the trial court did not "make [it] clear" that it was making an independent finding as to whether he was the actual killer.  This assertion has the law backwards.  The record need not affirmatively demonstrate the trial court's application of the correct legal standard; instead, we presume the court applied the correct standard unless there is evidence to the contrary.  (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 447; *People v. Mack* (1986) 178 Cal.App.3d 1026, 1032; Evid. Code, § 664.)  We decline defendant's implicit invitation to invert the applicable standard of review in his favor.

Here, there is no evidence in the record indicating that the trial court applied the wrong standard; to the contrary, the record is abundantly clear that the court applied the correct standard. Throughout the course of the proceedings, the court repeatedly

acknowledged that it was reviewing the record "independent[ly]" and "de novo," that it was acting "as the trier of fact," and that it was looking for proof "beyond a reasonable doubt." What is more, the court's ultimate ruling was a "find[ing] that [defendant] was, in fact, the actual shooter." These words leave no doubt that the trial court was independently making a factual finding beyond a reasonable doubt, and nothing else the trial court said supports a contrary conclusion.

Defendant makes what boil down to two arguments in response. First, he argues that the prosecutor urged the court to look to the jury's findings, that the trial court expressed some uncertainty regarding how much deference to give those findings, and that the trial court was willing to consider the prior appellate opinion in this case. This is an indication, defendant reasons, that the trial court was not making an independent finding of fact. We reject this argument because it conflates the two distinct questions before the trial court—namely, (1) did the jury's prior special circumstance finding obviate defendant's entitlement to relief as a matter of law, and (2) did the record of conviction plus the additional evidence presented at the section 1170.95 hearing warrant an independent finding beyond a reasonable doubt that defendant was the actual killer? The court ultimately determined that the answer to each question was "yes" when it ruled that "[t]he court finds that [defendant] is ineligible as a matter of law . . . and also finds that . . . he was, in fact, the actual shooter." The excerpts from the record defendant cites all pertain to the first question; because they deal with a separate question, they do not undermine the validity of the court's finding as to the second question. Second, defendant argues that the trial court did not lay out any of its reasoning or subsidiary

10

factual findings supporting its ultimate factual finding that defendant was the "actual shooter."  Defendant cites no authority to support the assertion that the trier of fact is obligated to provide such explication.  A jury is certainly not required to share its thought processes and intermediary factual findings; we see no reason why the rule should be different for the trial court making a factual finding when ruling on a section 1170.95 petition.

Accordingly, we conclude that the trial court applied the correct legal standard.

## II.    Does Substantial Evidence Support the Trial Court's Finding That Defendant Was the Actual Killer?

Defendant argues that the record of conviction along with the additional evidence presented by him and by the prosecutor in the section 1170.95 proceedings does not support the trial court's finding that he was the actual killer of Chase and Davidson.  As noted above, we review this finding for substantial evidence.  This obligates us to "view the evidence in the light most favorable to the . . . verdict, including 'resolv[ing] conflicting inferences' and credibility findings in favor of th[e findings]." (*People v. Collins* (2021) 65 Cal.App.5th 333, 344, citation omitted.)

Through this prism, substantial evidence supports the trial court's finding that defendant was the person who actually killed Chase and Davidson.  During the June 1995 trial, DeJohn testified that defendant had a gun, that he ordered Chase and Davidson out of the truck and directed them to "lay down" or "get on the floor," and that he then shot them.  This trial testimony was corroborated by what DeJohn said in his pretrial interview— namely, that defendant ordered the "man" and the "girl" out of

11

the truck at gunpoint, told them to kneel on the ground, shot the man first, and then shot the "girl." DeJohn's account is circumstantially corroborated by (1) the testimony of a nearby security guard and defendant's own testimony that the woman screamed, which would indicate Davidson had time to scream after she saw Chase being shot first, and (2) defendant's threats to kill Mitchell's aunt a few days later for talking to the police.

Defendant resists this conclusion with what collapses into four different arguments.

First, defendant suggests that DeJohn's testimony from the 1995 trial should be disregarded or, at a minimum, accorded little weight due to the uncertainty as to whether DeJohn ever promised to tell the truth. We reject this suggestion. Defendant fully and thoroughly litigated the validity of DeJohn's oath on direct appeal, and we upheld its validity. Our rejection of defendant's argument is now law of the case. (*Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, 957 ["The doctrine of law of the case gives finality to appellate decisions, precluding courts from revisiting issues that ha[ve] been determined in earlier appellate proceedings between the same parties"].)

Second, defendant argues that DeJohn's testimony from the 1995 trial, even if it may be considered, is not entitled to any weight because it is "dramatically" and "wildly" "inconsistent" (1) with itself, (2) with DeJohn's 2020 testimony that he "did not see" who killed Chase and Davidson, (3) with other evidence, including (a) Edwards's confession to being the shooter, (b) the testimony of DeJohn's great grandmother who told the cops that DeJohn had told her that "the other boy" did the shootings, (c) the fact that Mitchell (and not defendant) owned a .22-caliber

12

handgun, and (d) defendant's trial testimony denying being the shooter. Borrowing language from *People v. Bassett* (1968) 69 Cal.2d 122, 139 (*Bassett*), defendant says that all of this evidence contradicting DeJohn's testimony at the 1995 trial does not "inspire[] confidence" in the trial court's recent finding that defendant was the actual killer.

We reject this second argument for several reasons. To begin, this argument effectively asks us to conclude that DeJohn was not credible in 1995. That is beyond our purview. *Bassett*'s "inspiring confidence" language was doing no more than explaining the substantial evidence standard of review (*ibid.*), and it is well settled that, under that standard of review, we cannot question a jury's implicit finding that a witness is credible "'unless the [witness's] testimony is physically impossible or inherently improbable.'" (*People v. Brown* (2014) 59 Cal.4th 86, 106.) Here, nothing DeJohn testified to was physically impossible or inherently improbable. All defendant points to is inconstancies within DeJohn's testimony or inconsistencies between DeJohn's testimony and some of the other evidence at trial. Neither is enough to empower an appellate court to reject a jury's finding that a witness was credible. (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 878 ["[T]he fact that inconsistencies may occur in the testimony of a given witness does not . . . mean that such testimony is necessarily insufficient to support the verdict" because "[i]t is for the trier of fact to consider internal inconsistencies in testimony, to resolve them if this is possible, and to determine what weight should be given to such testimony"]; *People v. Wetle* (2019) 43 Cal.App.5th 375, 388 ["The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence"].) Even if we were to

13

ignore the prohibition against second guessing DeJohn's 1995 trial testimony, we tend to agree with the trial court that the inconsistencies defendant highlights do not call into question the veracity of that testimony. Although DeJohn's trial testimony was inconsistent regarding where he was coming from, where he sat, and whether he was asleep, DeJohn was consistent in his testimony that defendant held the gun, that defendant ordered the victims out of the truck and onto the sidewalk, and that he shot them. The fact that DeJohn was so young and that many parts of his testimony were not corroborated by others does not render the entirety of his testimony suspect. (*People v. Harlan* (1990) 222 Cal.App.3d 439, 453 ["testimony may not be rejected simply because of [the witness's] youth"]; *People v. Scott* (1978) 21 Cal.3d 284, 296 ["The uncorroborated testimony of a single witness is sufficient to sustain a conviction"]; accord, *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, 960 ["'[t]he fact that a very young witness makes inconsistent . . . statements does not indicate an inability to perceive, recollect, and communicate or an inability to understand the duty to tell the truth,' even if some parts of the child's testimony may be 'inherently incredible'"].)

The trial court also had a basis for viewing DeJohn's 2020 recantation with a jaundiced eye given that DeJohn's 1995 trial testimony came closer in time to the killings (and was strikingly consistent with DeJohn's even more contemporaneous statements to police), and given that an adult whose mother has been in prison for the past 25 years is more likely to be guileful than a six year old. Further, the trial court had a sufficient basis not to treat Edwards's confession as dispositive given that (1) the prosecutor at Edwards's preliminary hearing put no credence in it, and (2) Edwards's account that he was 8 to 16 feet away from

14

Chase and Davidson when he allegedly shot them was, contrary to what defendant argues, not consistent with the forensic evidence that at least one of the shots at Chase, which may or may not have been one of the same shots that penetrated his skull, was from made from less than two feet away.[2] What we are left with is defendant's request to weigh all of this evidence differently than how the trial court did and to come to a different conclusion. We cannot and will not do so. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Third, defendant argues that the prosecutor's decision not to charge defendant with any enhancements based on defendant's personal use of firearms undermines the trial court's finding that defendant was not the actual killer. We reject this argument. Charging decisions are a function of numerous considerations in addition to the strength of the evidence (*Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1132 ["[p]rosecutors have broad decisionmaking power in charging crimes" to which the judiciary shows "an extraordinary deference"]; *People v. Birks* (1998) 19 Cal.4th 108, 134 ["prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially

---

[2] Defendant argued to the trial court that the prosecutor was judicially estopped to deny the truth of Edwards's confession to being the shooter and had also violated defendant's due process rights by insisting, in 2020, that defendant was the actual killer after using the confession at Edwards's preliminary hearing. The trial court "completely and totally reject[ed]" those arguments as being unsupported by the record, which showed that the prosecutors of defendant, Mitchell, and Edwards had consistently maintained that *defendant* was the shooter. Defendant has not appealed this issue, so we have no basis to dispute the trial court's ruling.

15

available arises from "'the complex considerations necessary for the effective and efficient administration of law enforcement'"'"]; *People v. Andrews* (1998) 65 Cal.App.4th 1098, 1102 [prosecutor "is vested with substantial discretion in selecting which cases to charge and at what level" and "can exercise broad discretion in charging decisions"]); where, as here, the trial court's finding that defendant was the actual shooter of Chase and Davidson is supported by substantial evidence, the fact that the prosecutor did not allege a personal use enhancement does not undermine that finding.

Lastly, defendant implies that the trial court's finding is suspect because the court did not read the 1995 trial transcript from cover to cover. We reject this argument as disingenuous. The trial court told the parties what portions of the transcript it had reviewed and repeatedly invited the parties to bring any additional portions of the transcript they wished the court to consider. Defendant never did, and also never asked the trial court to read the whole transcript. For defendant to now complain about a process to which he acquiesced below is unfair. What is more, it is of no consequence because *we* have read the transcript from cover to cover and find that the trial court's finding is supported by substantial evidence.

## DISPOSITION

The order denying defendant's resentencing petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

17